|     |     |
| --- | --- |
| 8   | 461 |
| 10  | 146 |
| 33* | 254 |
| 37* | 259 |
| 8   | 461 |
| 12  | 471 |
| 8   | 461 |
| 29  | 61  |
| 29  | 64  |

# PEOPLE OF THE TERRITORY OF UTAH, RESPONDENT, v. CASS HITE, APPELLANT.

WITNESS.—CROSS-EXAMINATION.—IRRELEVANT MATTERS.—A witness may on cross-examination be interrogated concerning his past life and actions, and much latitude of inquiry should be permitted, even if it is attended with humiliation and disgrace to the witness. The limits of such a cross-examination are within the sound discretion of the trial court.

ID.— ID.— DEFENDANT AS WITNESS.— Where the defendant offers himself as a witness in his own behalf, his cross-examination is subject to the same rules as that of any other witness.

ID.— ID.— IRRELEVANT MATTER.— CRIME.— A witness may be asked on cross-examination whether he has ever been arrested, or whether he has ever been indicted, or charged with a crime, but cannot be contradicted upon such matters.

ID.— ID.— GOOD CHARACTER.— Where a witness was asked on his direct examination as to the reputation of the defendant as a peaceable, orderly, and law-abiding man, and also whether he has ever heard anything bad about the defendant, such witness on cross-examination may be interrogated as to his ever having heard of particular acts of lawlessness or bad conduct of the defendant.

CRIMINAL LAW.— SELF DEFENSE.— DEFENDANT AS AGGRESSOR.— Where the defendant seeks the deceased with the intention of having a difficulty with him, he is required to decline in good faith any further difficulty before killing the deceased, and if he wrongfully does bring on the difficulty and does not in good faith decline any further difficulty, he cannot justify himself on the grounds of self-defense.

ID.— TRIAL.— REMARKS OF COUNSEL.— Counsel in arguing. the cause to the jury are justified in referring to the evidence and in making from it such deductions as they think are justified by the evidence, and it is the province of the jury

to decide whether such inferences are warranted by the testimony.

APPEAL from an order refusing a new trial and from a judgment of conviction of the district court of the first district. The opinion states the facts, except the following. The whole charge of the court was as follows:

It now becomes my duty, gentlemen of the jury, to charge you as to the law of this case. This defendant is charged with murder—what is called murder in the first degree. Now, listen to the definition the statute gives:

" Murder is the unlawful killing of a human being with malice aforethought."

That definition embraces both murder in the first and in the second degrees.

" Such malice may be expressed or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned, or malignant heart."

Every murder perpetrated deliberately and premeditatedly, is murder in the first degree—every murder or killing perpetrated with deliberation and premeditation is murder in the first degree. Time, however, is not an element in the question of deliberation, and premeditation. A man may deliberately and premeditatedly determine to take the life of another, and execute it immediately. That is premeditation and that is deliberation, under the statute and under the definition of the court.

Murder in the second degree is the same as murder in the first degree, committed with malice aforethought, with the exception that it is not accompanied by deliberation and premeditation.

The punishment for murder in the first degree is death; for murder in the second degree, it is imprisonment for

life. For murder in the first degree it is death, with this exception; and I want to call your attention to this statute so that you will remember it:

"Every person guilty of murder in the first degree shall suffer death; or, upon the recommendation of the jury, may be imprisoned at hard labor in the penitentiary for life, in the discretion of the court."

If you find the defendant guilty of murder in the first degree you can recommend that his punishment be confinement in the penitentiary instead of death; then it is a question for the court to determine whether he shall be punished by death or by confinement in the penitentiary. The punishment for murder in the second degree is imprisonment at hard labor in the penitentiary for a term not less than ten years, and such imprisonment may extend to life.

Now, the killing in this case is not denied. The defense here is justifiable homicide—what is called justifiable homicide; and I call your attention to the definition given by the statute, the one applicable to this case:

"Homicide is also justifiable when committed by any person in either of the following cases:

"When resisting any attempt to murder any person, or to commit a felony, or to do some great bodily injury upon any person; or,

"When committed in defense of habitation, property or person, against one who manifestly intends or endeavors, by violence or surprise to commit a felony, or against one who manifestly intends and endeavors, in a violent, riotous, or tumultuous manner, to enter the habitation of another for the purpose of offering violence to any person therein; or,

"When committed in the lawful defense of such person, or of a wife or husband, parent, child, master, mistress, or servant of such person, when there is reasonable ground to apprehend a design to commit a felony or to do some

great bodily injury, and imminent danger of such design being accomplished."

Now, then, the defense here is that this man took the life of the other in self-defense; that is, to protect himself from death or from great bodily injury. Now, it isn't necessary that he should be really in danger. In the hour of peril, or of apparent peril, a man has the right to act on appearances. If he were in such a condition (not brought on by himself), in such a place where danger appeared to be imminent to a reasonable man, so as to influence the conduct of a reasonable man, so imminent that he would be himself killed or suffer great bodily harm, he has a right to act upon that and kill his assailant, if he is not a party in bringing himself into that position. If, however, he has brought himself into the position by his own acts, wrongful acts, so that he is in danger, why, then, he has no right to take the life of his assailant. If he is the aggressor in any way, then it is not self-defense for him to take the life of his assailant. In order to do that he has got to retreat and go out of the way, if he himself was active in bringing about the situation that is to him apparently dangerous. So, in determining these questions you will take into account the fact, if it be a fact—and I will charge you with reference to your finding now what are the facts in the case, if it be a fact that the deceased was in his own room, or at his own room, and the party came over there to the deceased, and he came there for the purpose of a quarrel, if you find that to be the fact, and then by his own act brought on the situation that seemed to him to be dangerous, he wouldn't be justified in taking the life, of his assailant. It would be necessary for him to retreat out of the way before he would be justified in doing that.

Every man charged with a crime is presumed to be innocent until he is proved guilty beyond a reasonable doubt. A reasonable doubt is one that arises out of the

testimony; and it is such a doubt as a man can give a reason for; not a mere flimsy guess, not a mere possibility, not a mere saying it may be so or may not be so; but it is such a doubt as would influence the conduct of reasonable men in the serious and solemn concerns of life; such a doubt as would influence one of you in the discharge of your duties as to your family, your country, and yourselves—not a mere guess, or possibility, or what may happen or possibly might happen, but such a doubt as would control your acts in the serious concerns of life.

I want to add to the instruction I have already given in reference to justifiable homicide: A bare fear of the commission of the offense, to prevent which homicide may be lawfully committed, is not sufficient to justify it, but the circumstances must be sufficient to excite the fears of a reasonable man, and the party killed must have acted under the influence of such fears alone. "The party killed"—that ought to be—I have been reading from the defendant's instruction—"the party killed" ought to be "the party killing—must have acted under the influence of such fears alone." Upon such appearances a party may act with safety; nor will he be held accountable though it should afterward appear that the indications upon which he acted were wholly fallacious, and that he was in no actual peril; in other words, a man is not guilty in such a case where the appearance proves false, when he would have been innocent if they had proved true. The rule in such cases is this: What would a reasonable person—a person of ordinary caution, judgment, and observation—in the position of the defendant, seeing what he saw, and knowing what he knew, have supposed from this situation and these surroundings? If such a reasonable person, so placed, would have been justified in believing himself in imminent danger, then the defendant would be justified in believing himself in such peril and in acting on such appearances.

30

If the jury believe, from all the evidence in the case, that it was necessary that the defendant should, or that he, acting as a reasonable man would under the circumstances, thought it was necessary for the defendant to kill the deceased, or disable him, in order to save his own life, or prevent the deceased from doing him some great bodily harm, then he was justified in taking the life of the deceased, and should be acquitted—unless, as I said before, the defendant here was to blame, and was the aggressor in procuring the situation in which he was in danger.

Gentlemen, you are instructed that you are the sole judges of the testimony, the evidence, its weight and its credibility. In determining those questions you will exercise your judgment as men; you will consider the motives that influence and control the conduct of men; those which influence men's acts in testifying; the appearance of the witnesses on the stand; their relation to the parties, the situation in which they are placed—the motives if any, that could influence them to testify falsely. Now, I suppose it is a truism that men do not testify falsely without a motive of some kind. If there is some apparent conflict in the testimony, it is your duty to reconcile it if you can; if not, then it is your duty to determine who has told the truth. As I said before, it is a truism that men scarcely ever act without a motive—that is, sane men; and if, in looking into the case, from the evidence and the surroundings you can determine the motives that have influenced the witnesses in this case—that would probably influence them—you will take all that into the account in determining who has told the truth, if there is a conflict.

COL. MONTGOMERY—What was the last remark?

THE COURT—As to who has told the truth, if there is a conflict in the testimony. Friendship sometimes induces a man to go farther than the truth in behalf of his friend; and the relation of the parties as to friendship and friendly

relations; the relations of the parties as to business, the relation of the parties as to the interest they may feel and did feel in the party who was killed, the deceased, their relations to him, and the feelings they have now in relation to the punishment of the man who killed him,—if any such exist—take all that into account in determining who has told the truth and who has not, where there is a conflict.

As to character: There has been some evidence introduced here to prove the character of the defendant as to good order, a law-abiding disposition, peace, and all that. Now, if you think that is sufficiently proved—his character as such—that he was, up to the time he was charged with this crime, a peaceable, orderly citizen, you will take that into account in determining the question as to whether he is guilty or innocent of this crime. A good character is worth a good deal to a man; and it is worth very much to a man where there is a doubt or where there is in any way a question as to his conduct—criminal conduct; and if that character, as proven before you, is such as to raise in your minds a doubt of his guilt, the defendant is entitled to the benefit of that doubt.

If you believe from the evidence, beyond a reasonable doubt, that the defendant is guilty of murder in the first degree, it is your duty so to find. The question of punishment, excepting as I have told you about the recommendation, is not to influence your verdict. If, beyond a reasonable doubt, you find the defendant guilty of murder in the second degree, it is your duty to so find. If you have a doubt—if you believe it is murder in one or the other degree, and you have a doubt as to which degree it is, it is your duty to find the defendant guilty of murder in the lower degree; that is, if you believe, beyond a reasonable doubt, that he is guilty either of murder in the first or murder in the second degree, and you have a doubt as to which you ought to find, it is your duty to give the

defendant the benefit of the doubt and find him guilty of
murder in the second degree. If you have a doubt as to
whether the homicide was justifiable, the defendant is
entitled to the benefit of that doubt, and you should
acquit him.

Gentlemen, is there anything else you want to ask an
instruction on?

COL. MONTGOMERY—No, sir; I think not, so far as we
are concerned. I think your honor has covered the
ground.

THE COURT—Yes, I think I have covered all the
ground.

COL. MONTGOMERY—Yes, sir; I think so. I don't know
what the practice here is as to taking exceptions.

THE COURT—Your co-counsel there can tell you
about that. You take your exceptions now, and you take
specific execeptions. You can't take a general exception
to the charge and have it avail anything.

COL. MONTGOMERY—I was about to rise to do that. In
the first place—and I think it was an oversight—in the
definition of murder in the first degree, your honor
defined it as the deliberate, premeditated taking of life.
That is not sufficient. Your honor left out the element
of malice aforethought as to murder in the first degree.

THE COURT—I read that. The charge is, gentlemen—
I will correct that—the charge in the indictment is that
with premeditation and deliberation and malice afore-
thought he committed the act. All those elements have
got to enter into the crime of murder in the first degree.

COL. MONTGOMERY—My attention is called to this:
There is another point. Your honor has said that if the
defendant wrongfully went to the place of the affray. I
think your honor made no mistake there, and we take an
exception as to the legal proposition on that point as
conveyed in that charge—that, in itself, not being suffi-

cient, as I understand the statute and the law. He must have gone there with the intent to have this affray or this trouble. If he went there without such intent, although it might have been entertained afterward, that rule does not apply. And second, in such case, if he did go there for trouble, he must retreat. There was no qualification there. I understand the law to be, if he could do it with safety, but if retreat only added to his peril, he was not bound to retreat then.

THE COURT—I will modify that instruction in this way: If it appears from the evidence beyond a reasonable doubt that the defendant went to the house there wrongfully, with a wrong intention, whether to kill or not, but went there for the purpose of a quarrel, and by his own acts put himself in that position, in a dangerous position, it was his duty to retreat from that, and decline any controversy, if he could with safety. He wasn't bound to run away and take a shot in the back. That is all.

COL. MONTGOMERY—We desire an exception to your honor's refusal to give the special charges as requested, and each of them, that were not given.

THE COURT—There have been four forms of verdict prepared under the direction of the court, and they are in the hands of the jury. The jury may retire.

The claim was made by defendant's attorneys that the prosecuting attorney in his address to the jury, argued that the defendant was a counterfeiter, a desperado, and a harborer of horsethieves. No such remarks were incorporated in any bill of exceptions or appeared anywhere in the record.

*Mr. B. F. Montgomery* and *Messrs. Powers and Hiles,* for the appellant.

*Mr. John M. Zane,* Assistant U. S. Attorney, for the respondent.

ZANE, C. J.:

The defendant was tried on an indictment charging him with the crime of murder, the jury found him guilty of murder in the second degree, the court overruled his motion for a new trial, entered judgment on the verdict and sentenced him to imprisonment in the penitentiary for the term of twelve years. From the order overruling his motion and from the judgment on the verdict the defendant appealed to this court. His counsel make numerous objections to the rulings of the court upon which they rely for a reversal of the judgment. They claim that the evidence did not authorize the verdict and that the court erred for that reason in overruling the motion for a new trial.

It appears from the evidence in the record that the defendant and deceased lived at Green River, Emery county, Utah; that the defendant on the 8th day of September, 1891, returned to that place from the city of Denver, where he had heard something that incensed him against Adolph Kohler, the deceased; that the latter learned on the morning of the next day that the defendant had made threats against him; that he borrowed a rifle and then went to the Gammage cabin where he roomed and a little before noon went a short distance away to Mrs. Johnston's to dinner taking his rifle with him and after dinner came back to his room went in and put his rifle away. It also appears that the defendant heard that deceased had the rifle, and there is evidence that he had heard threats made by deceased against him and that defendant had said that he intended to "round Kohler and another man named Drake that day;" that he went to his cabin which was about 90 yards from the Gammage cabin; that, armed with a revolver called a six-shooter, in company with another man named Shafer, also armed with a similar weapon, he went to the Gammage cabin at about one

o'clock of the day; that Kohler was there, sitting under a bowery in front of the house and as soon as he saw Hite and Shafer coming, went into the house and got the rifle and stood in the door of his room, which was the front door of the house. As Hite came up, Mrs. Gammage, wife of the man who owned the place, came out of the door, passed Kohler, went up to Hite, laid her hand on his arm and said to him to go away, that she didn't want him to come there making trouble. There is also evidence that Hite walked past her, came under the bowery, spoke to the people there and then said, "Kohler I hear you are carrying a Winchester around town for me." Kohler replied: "I havn't said, Hite, I was carrying a Winchester for anybody." Hite said "Put down your gun, I want to talk with you." Kohler who was holding his gun presented towards Hite then said: "There are no second or third parties in this are there?" and Hite replying "No," Kohler put his gun down holding to the muzzle, or as some of the witnesses said the butt, resting it on the door sill and Hite sat down in a chair; that some words were said, and Hite exclaimed "Any man who will carry a Winchester around town for another man is a damned cowardly s—— of a b——." Kohler replied, standing with his gun down,. "I think any man who will carry a six-shooter around town is the same thing." Hite exclaiming "Take it back," jumped out of his chair, drawing his six-shooter quickly, and shot twice in quick succession at Kohler still standing with his gun resting on the door sill; that Kohler staggered back, reeling, then stepped forward a step or two, raised his gun half way to his shoulder and Hite who had jumped to the corner of the house, fired again and just after he fired, Kohler's gun went off for the first time but the bullet went towards the earth, and the gun dropped from Kohler's hand; that he turned around, staggered into the house and died in a few moments. There is also evidence that deceased was shot in

three different places—in the left side, through the left wrist and through the left arm, and that defendant fired at least two shots at him after the first one; that defendant also shot Drake (who was standing several feet away from the deceased and against whom he was also incensed) in his left breast and through his left arm, from the effects of which he fell to the ground, very seriously, though not fatally wounded.

There is also evidence tending to show that defendant called on the deceased at the time of the homicide to talk over their differences and to come to an understanding and that deceased fired the first shot—the testimony is conflicting.

The testimony to the effect that the defendant commenced the quarrel and actually brought on the fatal conflict by firing the first shot is much more reasonable in the light of the circumstances immediately preceding and attending the shooting. The facts that the defendant had made threats that day against deceased preceding the homicide; that he was angry and went over to where deceased was peaceably sitting; that he and his companion were armed, the manner in which defendant conducted himself and the precision with which he used his weapon, the killing of one of the men that he shot at and wounding the other, the rapidity of the shots, his coolness and expertness, all indicate premeditation; not mere self defense or mere excitement.

Defendant's entire conduct immediately preceding and attending the conflict indicates expectation, anticipation, determination and malice, while the conduct of the deceased indicated that he was afraid of the loss of his life or injury from the defendant and that he wished to protect himself, but that he lacked the courage and the expertness in the use of his weapon to do so.

In view of the evidence we cannot say that it does not support and justify the verdict.

Counsel for the defendant also insist that the court committed errors in overruling objections by them to questions propounded to the defendant on his cross-examination. They made several objections but took very few exceptions. They insist that the court permitted the cross-examination to take too wide a range. The defendant testified in his own behalf, and under the statutes of Utah his cross-examination was subject to the rules limiting the cross-examination of other witnesses. His counsel on the direct examination asked him, "what has been your business for the last twenty years?" And he answered that he had been engaged in prospecting and mining in Montana, Idaho, New Mexico, Arizona, Sonora, Chihuahua, Colorado and Utah and that he had been so engaged in Utah twelve years, he mentioned particular places where he had been so occupied and also his trip to Denver and how finally came to Green River, and the fatal conflict.

In his cross-examination the prosecuting attorney went still further back and his inquiry descended still further into particulars; he interrogated the defendant as to transactions evidently for the purpose of testing his recollection and of bringing to light conduct that would affect his credibility.

It is the duty of the juror to judge of the credibility of the witness and to weigh his testimony in the light of his opportunities to know, to understand and remember and in view of his motives and his moral worth as evidenced by his conduct, and in view of his character established by his life as well as by the light of experience and reason.

To enable the juror to judge of the credibility of the witness, rigid cross-examinations are sometimes necessary and much latitude of inquiry should be permitted. The investigation of truth is sometimes attended with the humiliation and disgrace of the witness and appears to be remorseless.

In the case of *Territory* v. *O'Hare*, 44 N. W. Rep. 1003, the court said: "Defendant voluntarily took the stand as a witness in his own behalf, and testified at large upon the issues. Upon cross-examination, he was required to testify as to his antecedents, and in doing so stated that he had passed under the name of 'Sullivan' at Fargo, and had been in jail at Fargo and at Stillwater, Minn. This testimony was objected to by defendant's counsel as irrelevant, and not proper cross-examination. The objection was overruled, and the ruling is assigned as error. It is well settled that witnesses who are not parties may, for the purposes of impeachment, and within the sound discretion of the trial court be required to testify as to facts, tending to degrade them, which are collateral to the issue. * * * We hold that the right of cross-examination as to outside matters of fact, which affects the general character of the witness, and tend to degrade him, and affect his credibility, is, within the limits of a sound judicial discretion, a salutary rule." *Burdette* v. *Commonwealth*, 18 S. E. Rep. 1011; *State* v. *Merriman*, 13 S. E. Rep. 328; *People* v. *Robinson*, 49 N. W. Rep. 260.

J. H. Lee was called as a witness by the defendant and on his direct examination he was asked, "Do you know what his general reputation has been and is among the people with whom he has done business and been acquainted with in the neighborhood where he has lived as to being a peaceable, quiet, law-abiding citizen? A. Yes, good; so far as I know. Did you ever hear anything bad about him? A. No. Q. Until this matter arose? A. Don't know as I have."

The prosecuting attorney on cross-examination asked "Have you ever heard of Hite getting any of his engraving work done at Bright's—the engraving I mean, are engravings upon a die for money? A. I think, Mr. Nichols, someone told me there was something of that

kind—I think it was Mr. Nichols, but I never saw that."
To this question defendant's counsel made an objection
which was overruled by the court, and exception taken.
In view of the fact that defendant's counsel had asked the
witness on the direct examination what defendant's general
reputation was as to being a law-abiding citizen and
whether he had ever heard anything bad about him we
think the questions asked on cross-examination and objected
to were proper.

Bert Seabold having been interrogated as a witness for
the defense as to the general reputation of defendant as a
peaceable, quiet and law-abiding man, and having answered
that it was good, the prosecuting attorney asked the wit-
ness on cross-examination, "You have been under indict-
ment in this court yourself, haven't you?" To this ques-
tion the defense objected and it being overruled by the
court, exception was taken and the witness answered that
he had.

If a witness has been charged with a crime or arrested
or indicted for it, he may be asked about it on cross-exam-
ination, and when such facts are irrelevent to the matter
in issue the party putting the question is bound by the
answers of the witnesses, he cannot call other witnesses
and prove that the answers are false. *People* v. *Clark*, 8
N. E. Rep. 38; *Wroe* v. *The State*, 20 Ohio, 460; *People*
v. *Myer*, 17 Pac. Rep. 431.

The defendant also claims that the court did not state
the law of self-defense correctly to the jury.

In its charge to the jury the court said, that the defense
was justifiable homicide and proceeded to define it as
applicable to the evidence.. In doing so he read more of
the statute than was necessary in view of the evidence,
and omitted to read all that was applicable, but he stated in
his own language to the jury that which he omitted to read.

The court said in substance that if the circumstances
were such or so appeared to be as to induce in the defend-

ant at the time of the homicide a reasonable belief that it was necessary for him to kill Adolph Kohler to save his own life or to prevent great bodily injury and that in good faith he acted upon such belief and killed Kohler he was justified unless the jury further believed from the evidence beyond a reasonable doubt that the defendant wrongfully brought on the quarrel or difficulty which resulted in such killing and did not in good faith decline any further difficulty with the deceased before firing the fatal shot. Defendant's counsel insist that the jury may have understood the court to say that the defendant could not justify the killing of Kohler if he called on him for the purpose of explanation or of reaching an amicable and peaceable settlement of their differences—if he went to the place of the homicide with justifiable motives and for lawful purposes. We do not think that the language used in the charge of the court was subject to such an interpretation or to such a construction.

"The court charged the jury that if the deceased was at his own room and the defendant came over there to the deceased for the purpose of a quarrel and then by his own act brought on the situation that seemed to him to be dangerous he would not be justified in killing the deceased. It would be necessary for him to retreat out of the way before he would be justified in doing so." And when the attention of the court was called to this portion of the charge by counsel for the defendant, it further said to the jury, "I will modify that instruction in this way; if it appears from the evidence beyond a reasonable doubt that the defendant went to the house there wrongfully, with a wrong intention whether to kill or not, but went there for the purpose of a quarrel, and by his own acts put himself in that position, in a dangerous position, it was his duty to retreat from that and decline any controversy if he could with safety; he was not bound to run away and take a shot in the back."

This statement of the law of justifiable homicide applicable to the facts was favorable to the defendant.

If the defendant sought the deceased with the intention of having a difficulty with him the law required him to decline in good faith any further difficulty, before killing him, and if he did so wrongfully bring on the difficulty and did not decline any further difficulty before the shooting he could not justify the homicide on the ground of self defense.

*People* v. *Lamb,* 17 Cal. 323; *Adams* v. *People,* 47 Ill. 376; *Commonwealth* v. *Selfridge,* 1 Crim. Def. Horrigan and Thompson, p. 1; *People* v. *Stonecifer,* 6 Cal. 405; *People* v. *Travis,* 56 Cal. 251; *State of Iowa* v. *Neeley,* 20 Iowa, 108; *Rippey* v. *State,* 2 Head, 217.

Counsel for defendant insist that too much liberty of statement and expression was indulged in by the prosecuting attorney and permitted by the court on the trial of the cause, and it appears that some personalities towards one another was indulged in by counsel on both sides. In view of this the counsel for the defendant assigns as error the refusal of the court to give the following request.

"The jury are further instructed that whatever may have been said or claimed by counsel on either side during the introduction of the testimony, and the examination of the witnesses, or in their arguments to the court, should have no influence whatever with the jury in determining the facts in the case, except so far as the testimony when considered altogether may show the statement to have been true. The jury should not be influenced by anything but the testimony in the cause, with whatever light may have been reflected thereon by the arguments and analysis of counsel and the law as it has been given you in charge by the court, and from these alone endeavor to arrive at the very truth regardless of results."

Jurors should take into consideration the questions stated by counsel to the witness with their answers, counsel may

restate the testimony and refresh the memory of the jurors, they may state it in connection with other evidence and state its effect as they understand it, and draw inferences and state their conclusions.    Facts to which no witness has testified may be inferred from those testified to and their existence may be claimed by counsel.

Coincidences, corroborations, disagreements or absurdities which arise when the evidence is considered alone or when considered with respect to matters of common knowledge may be pointed out and stated by counsel; they may refer to the laws of cause and effect, to the laws of nature, to the relations of things to human nature as manifested in conduct under given conditions and from such laws and facts and from the evidence they may infer motives or designs good or bad.

There is also a great fund of knowledge common to all mankind which counsel may resort to in the argument to a jury, and from inferences drawn from that knowledge in connection with the evidence, and facts of the cause, and from illustrations which they may properly make they may influence the minds of jurors.    Counsel may state presumptions of fact, presumptions of law and legal principles applicable to the case to be controlled however by the charge of the court.

Of course counsel have no right to state any expression, act, intent or motive of the defendant except so far as testified to or inferable from the evidence.

They have no right to make any statement as to the defendant's character except so far as the law presumes or as they are authorized by the evidence  or as they may be inferred from it.

The statements of the prosecuting attorney objected to were conclusions and inferences as he claimed from the evidence and authorized by it.    There was some evidence upon which to base them; when the evidence was all considered together it may not have been sufficient to the

minds of some men to warrant such conclusions but it was the province of the jury to judge of the credibility of the witnesses, to weigh the evidence and to find the facts.

While we think the request is susceptible of a construction that would make it substantially correct the jurors might have attached to it a meaning that would have limited the influence and effect of legitimate statements of counsel and of their arguments, too much.

With other principles of law stated in the charge the court announced to the jury that every man charged with a crime is presumed to be innocent until he is proven guilty beyond a reasonable doubt. The charge also contains the following:

"If the jury believe, from all the evidence in the case, that it was necessary that the defendant should, or that he acting as a reasonable man would under the circumstances, thought it was necessary for the defendant to kill the deceased, or disable him, in order to save his own life, or prevent the deceased from doing him some great bodily harm, then he was justified in taking the life of the deceased, and should be acquitted—unless, as I said before, the defendant here was to blame, and was the aggressor in procuring the situation in which he was in danger."

The jurors must have understood from the charge that they should form their beliefs from the evidence before them.

In view of the fact that the charge of the court as given appears to be fair and to cover all the points upon which it was necessary to charge the jury, we find no error in the refusal of the court to give the request asked.

Other errors are assigned by the defendant's counsel but we do not deem it necessary to consider them further in this opinion, as we do not find any reversible error in the record.

The judgment of the court below is affirmed.

BARTCH J., and MINER, J., concurred.