[Crim. No. 2501.   Fourth Dist., Div. Two.   July 28, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. CRESENCIO CHAVEZ NAVARRO, Defendant and Appellant.

Charles E. Ward, Public Defender, under appointment by the District Court of Appeal, and Dyson William Cox, Deputy Public Defender, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Richard D. Huffman, Deputy Attorney General, for Plaintiff and Respondent.

McCABE, P. J.—In March 1962 a criminal complaint was filed against defendant charging him in two counts with violations of section 487, Penal Code (Grand Theft). A preliminary hearing was set for March 27, 1962, at which time defendant was sworn and gave testimony regarding and admitting his participation in the crimes charged. The judge of the municipal court held defendant to answer in the superior court. On March 30, 1962, an information was filed charging defendant with violations of section 487, Penal Code. At the arraignment in the superior court an attorney was appointed to represent defendant. Defendant entered pleas of guilty to the charged counts after which defendant's counsel moved to

suspend further criminal proceedings for the purpose of a determination of drug addiction. The court so ordered. As a result of the drug addiction proceeding, defendant was committed to the Narcotics Rehabilitation Center at Norco. Later and in July 1965, defendant filed a petition for a writ of habeas corpus, which was granted and defendant released from the rehabilitation center. The criminal proceedings were reinstituted with a resultant judgment of conviction and a sentence to the state prison. From this judgment defendant appeals.

On this appeal defendant's sole contention is that he was denied counsel at the preliminary hearing because he did not intelligently waive the right to counsel, citing to us *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361] ; *Escobedo* v. *Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977] ; *Von Moltke* v. *Gilles,* 332 U.S. 708 [68 S.Ct. 316, 92 L.Ed. 309] ; *Johnson* v. *Zerbst,* 304 U.S. 458 [58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357].

*Dorado, supra,* concerned the admissibility of an extrajudicial statement wherein the defendant had not been advised of his constitutional rights to counsel and his right to remain silent and whether, not knowing his rights, he waived them. The Supreme Court of California said at page 353: "As the court in *Killpatrick* v. *Superior Court* (1957) 153 Cal.App.2d 146, 150 [314 P.2d 164], said in discussing the privilege against self-incrimination, 'The defendant . . . cannot be charged with a waiver of the privilege unless it appears that he was aware of its existence and its surrounding safeguards and voluntarily and intelligently elected to refrain from asserting it.' "

Because of the facts in *Von Moltke, supra,* being so diametrically opposed to the present facts, it can stand for no authority to aid defendant.

In *Zerbst, supra,* a duty is placed upon the trial judge to determine ". . . whether there has been an intelligent waiver of right to counsel. . . ," and "must depend, in each case, upon the particular facts and circumstances surrounding the case, including the background, experience and conduct of the accused." (See also *People* v. *Chesser,* 29 Cal.2d 815, 822 [178 P.2d 761, 170 A.L.R. 246] ; *In re Johnson,* 62 Cal.2d 325, 335 [42 Cal.Rptr. 228, 398 P.2d 420] ; *In re Woods,* 64 Cal.2d 3 [48 Cal.Rptr. 689, 409 P.2d 913] ; *In re Luce,* 64 Cal.2d 11 [48 Cal.Rptr. 694, 409 P.2d 918].) Under *Zerbst* · the waiver must be an intelligent and competent waiver by the

accused and the high court suggests ". . . it would be fitting and appropriate for the determination to appear upon the record."

*Escobedo, supra,* concerned itself with extra-judicial statements made without advice of counsel to law enforcement officers without being advised of his constitutional rights and later admitted into the evidence at the trial.

Although a plea of guilty is an admission of the defendant's guilt and of every element of the crime charged, *People* v. *Jones,* 52 Cal.2d 636, 651 [343 P.2d 577]; *People* v. *Emigh,* 174 Cal.App.2d 392, 393 [344 P.2d 851], it does not preclude an appeal which raises issues of "irregularities . . . going to the jurisdiction or legality of the proceedings. . . ." (*Stephens* v. *Toomey,* 51 Cal.2d 864, 870 [338 P.2d 182]; *People* v. *Lockridge,* 233 Cal.App.2d 743, 745 [43 Cal.Rptr. 925].) Thus on this appeal after a plea of guilty, we must examine the record to determine if such irregularities or jurisdictional and legal issues are involved. A denial to be represented by counsel or a waiver of other constitutional rights not knowingly, intelligently, properly or competently made would bring this appeal within the cited exceptions.

At the preliminary hearing with a reporter and defendant's mother present, defendant was told in unstilted simple language the various constitutional rights which the Constitutions of the United States and California and decisional law enumerate as guarantees to a defendant. These pronouncements were made to defendant by taking each right in turn, explaining it to him and then questions were put to defendant regarding the particular right then under consideration. The defendant gave clear and specific answers to the questions as to each constitutional right. In each answer it is clear defendant understood the question and gave a lucid reply indicating he waived the specific right. As to several rights explained to and answered by defendant, repetitive questions and answers were asked and answered. Defendant's mother being present, she was asked questions and the answers were given by her. From these questions and answers it appears she had previously talked to her son about his right to counsel, his right to remain silent and she understood that her son was waiving his rights and wanted to make a truthful statement of the events in question. It was explained to defendant and his mother that if defendant made a statement he would, in effect, be a witness against himself, a court reporter would "take down" all that was done and said and later the testimony

might be used against him. To these statements defendant personally, expressly and on the record replied he did understand, and understanding, he waived the rights. At the conclusion of this rather lengthy procedure, the judge stated: "If it is your wish you may stand, raise your right hand and take the oath." Defendant was sworn after which the following occurred:

"Q. Mr. Navarro, do you realize that if you intend to plead guilty [*sic*] at any later time in these proceedings that it would be very foolish for you to say anything at this time, because anything you say is being taken down by the court reporter and could be used against you in a later proceeding? You understand that? A. Yes.

"Q. Do you also understand that no one, and especially no law enforcement officer, has any right or privilege to use any force or threats of force or violence to induce you to make a statement? A. Yes, sir.

"Q. Has anyone, and especially any law enforcement officer, used any force against you or threats of force against yourself or your family in order to induce you to make this statement? A. No, sir.

"Q. So it's free and voluntary, is that correct? A. That's right.

"Q. Do you understand that no one, and especially no law enforcement officer, has any right to promise you any leniency or reward or escape from punishment to induce you to make this statement? A. I understand.

"Q. And has anyone made you any promises of leniency or reward or lack of punishment in order to induce you to make this statement? A. No.

"Q. You also understand what you're testifying to is you're pleading guilty to this charge of grand theft, three counts? A. Yes, sir.

"Q. And any sentence you may get would be up to the Court and not the law enforcement agencies? You understand that? A. Yes, sir.

"Q. Mr. Navarro, are you making this statement because you know and admit your guilt rather than just an attempt to speed up the processes of the law? A. Well, yes. I'm doing it because I know I'm guilty. But I would like to get this over with.

"Q. What you say here will be the truth? A. Yes, sir.

"Q. And you're doing it voluntarily, is that correct? A. That's correct.

"Q. And you've talked this over with your mother in regard to what you're doing? A. I have."

The trial judge is in the unique position to determine matters, which position is unavailable to any other person, particularly those reviewing a record. The defendant is before him. The trial judge, as any other trier of fact, applies the principles to the statements made; the manner in which the defendant responds or makes statements; the character of the responses or statements; the degree of intelligence exhibited by the defendant; the lucidity of his responses or statements; the defendant's ability or inability to express himself in the English language and other actions or reactions which are observed or heard by the judge. ▮ No precise or exact formula can be or should be pronounced to determine the knowledge or understanding of the defendant, or his capacity for understanding his constitutional rights and intelligently waiving them. When the judge has explored the areas in which defendant has constitutional rights, applies the cited principles, he makes a determination. ▮ Although there is a slight indication in a couple of appellate court opinions that it would be better practice to have the determination "on the record," no such requirement is expressed, statutorily or decisionally, (see *Von Moltke* v. *Gilles, supra*) requiring it. The expression as used in the *Zerbst* case in substance was incorporated in section 1018, Penal Code, enacted in 1951, which reads in part:

". . . . No plea of guilty of a felony for which the maximum punishment is death, or life imprisonment without the possibility of parole, shall be received from a defendant who does not appear with counsel, nor shall any plea of guilty of any other felony be accepted from any defendant who does not appear with counsel unless the court shall first fully inform him of his right to counsel and unless the court shall find that the defendant understands his right to counsel and freely waives it and then, only if the defendant has expressly stated in open court, to the court, that he does not wish to be represented by counsel."

No case has been cited and we have found none which under this Penal Code section requires a specific recorded finding by the trial court. ▮ It seems a fair interpretation of section 1018, *supra*, that when the court as it did in this case carefully explains, questions, obtains answers to questions and covers the necessary areas of inquiry, and has the defendant sworn, he has found and determined that there has been a satisfaction of his duties owed to defendant.

We cannot find that as a matter of law any fixed, set, formalized formula or procedure can satisfy the requirements of the law for as was said in *Zerbst, supra,* the waiver must depend upon the particular facts and circumstances to which we may properly add the various principles cited in this opinion.

Had there been any doubt in the mind of defendant or his counsel at the time of the arraignment in 1962 in the superior court, a motion under section 995, Penal Code, or a motion for change of plea could have been made. After a lapse of over three years from the 1962 events, when the defendant was brought before the court for arraignment, preliminary to the pronouncement of judgment and sentence, defendant had an opportunity of which he did not avail himself, to state to the trial judge there was legal cause why he should not be sentenced.

After an exhaustive review of the record, evidence and law, we do not find error.

Judgment affirmed.

Kerrigan, J., and Tamura, J., concurred.