**STATE of Utah, Plaintiff and Respondent,**

v.

**George Wesley McCUMBER, Defendant and Appellant.**

**No. 16716.**

Supreme Court of Utah.

Dec. 9, 1980.

---

9. Id.

Bruce C. Lubeck of Salt Lake Legal Defenders Ass'n, Salt Lake City, for defendant and appellant.

Robert B. Hansen, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

HALL, Justice:

Defendant appeals his conviction by a jury, of one count of aggravated sexual assault,[1] one count of aggravated burglary,[2] and one count of attempted rape.[3]

At approximately 1:00 a.m. on the morning of Wednesday, May 9, 1979, prosecutrix Nichol was awakened from sleep by the presence of someone in the bedroom of her apartment in Salt Lake County, Utah. The assailant placed his hand over her mouth and threatened her with violence if she moved. Prosecutrix Nichol was unable to see her assailant's face due to darkness, but heard him speak several short sentences regarding the presence of others in the apartment. The assailant placed a blouse over the eyes of the prosecutrix as a blindfold, following which he perpetrated three acts of rape on her person.

At approximately 4:00 a.m. on Wednesday, June 6, 1979, prosecutrix Morris, a resident in the same general vicinity as that of prosecutrix Nichol, was awakened by an assailant who put his hand over her mouth and threatened her with violence were she unwilling "to do what he said." Prosecutrix Morris was able to see the face of her assailant by reason of the light coming in from her window. She was ordered to turn around and not to look at him, the order being accompanied by a sharp, pointed object pressed to her side. She then told her assailant that she needed to go to the bathroom and was released. Upon reaching the bathroom, she turned on the light and turned to see her assailant standing in the hall. At this point, prosecutrix's mother was awakened and called out, and the assailant fled.

Based upon a voice identification by prosecutrix Nichol, defendant was charged with one count of aggravated sexual assault. On the strength of a lineup and voice identification, coupled with identification of a coat belonging to defendant, on the part of prosecutrix Morris, defendant was charged with one count of aggravated burglary and one count of attempted rape. On September 10, 1979, following a trial to the lower court sitting with a jury, defendant was found guilty on all three counts.[4]

Defendant first assigns as error the trial court's failure to grant a motion, filed subsequent to entry of not guilty pleas but prior to trial, to sever the counts of the information for separate trial. The trial court denied the motion on the grounds that a challenge to the form or content of the information must be made by motion to quash, and that, so viewed, defendant's motion was not timely filed according to statute.

The Utah Code of Criminal Procedure states that "if the defendant does not move to quash the information or indictment before or at the time he pleads thereto he shall be taken to have waived all objections which are grounds for a motion to quash ...."[5] Among the grounds set forth by

---

1. In violation of U.C.A., 1953, 76–5–405.

2. In violation of U.C.A., 1953, 76–6–203.

3. In violation of U.C.A., 1953, 76–5–402 and 76–4–101.

4. Defendant was charged in the same information with an additional count of aggravated sexual assault on the person of another individual, and with one count of attempted burglary. He was acquitted on both these counts.

5. U.C.A., 1953, 77–23–10, as amended.

statute for a motion to quash an information or indictment is the joinder of more than one offense therein.[6] By the strict language of the statute, therefore, defendant effected a constructive waiver of all objections to the information filed against him by his failure to move to quash the information prior to pleading to the charges made therein.

■ Defendant asserts, however, that the failure of the trial court to agree to a severance of the diverse counts of the information for trial denied him due process of law. While the fundamental right to due process may in fact be waived, such waiver may not be presumed absent a showing that it was knowing and voluntary.[7] This suggests that, in the instant case, the statutory waiver due to failure timely to file a motion to quash, invoked both by the lower court and by the state pursuant to this appeal, may not be used to defeat defendant's right to separate trials of the various charges pressed against him in the event that due process should require. This conclusion is mandated by the absence of any showing that defendant's untimely action in the matter of moving for severance was occasioned by a desire to forego the right of separate trials. We are compelled to agree that due process did require such severance, and remand the case to the trial court for further proceedings.

■ We are aware that under Utah law, it is permissible to join in the same indictment or information two or more offenses which are of the same or similar character.[8]

We also understand that severance of the various counts contained in an information rests within the discretion of the trial court, in the interests of the preservation of justice.[9] Where such joinder jeopardizes a criminal defendant's fundamental rights of due process, however, it must be regarded as an abuse of the discretion so extended. In the instant case, it must be observed that, while four of the five counts charged in the information were indeed of similar character, they did not form part of the same criminal transaction, nor were they so nearly identical as to evince a common design or scheme. The prejudicial impact upon a jury, listening to evidence relating to five separate alleged instances of criminal behavior, cannot be underestimated. It is also to be noted that, were the diverse counts of the information in question to be tried separately, evidence relating to each count would not be heard by the jury trying other counts; the evidence relating to the various alleged offenses is not "mutually admissible."[10] It is also to be borne in mind that, while defendant's motion was not made in time to comply with the strict requirements of statutory law, it was filed well in advance of the trial, and occasioned no surprise or unnecessary inconvenience for the state and the court. A consideration of all the foregoing circumstances leads to the conclusion that defendant had a due process right to severance of the counts contained in the information, and that denial of a motion to that effect was therefore improper, in that the waiver effected by the statute was not proven to be knowing and voluntary.

6. U.C.A., 1953, 77–23–3(1)(g), as amended.

7. *United States v. Drummond*, 354 F.2d 132 (2nd Cir., 1965); *People v. Navarro*, 243 Cal. App.2d 755, 52 Cal.Rptr. 686 (1966); *Huffman v. Alexander*, 197 Or. 283, 251 P.2d 87 (1952); *Norman v. State*, 81 Okl.Cr. 78, 160 P.2d 739 (1945).

8. U.C.A., 1953, 77–21–31, as amended.

9. U.C.A., 1953, 77–21–44, as amended.

10. Counsel both for the state and for defendant devote a considerable amount of time and energy arguing whether or not evidence relating to the diverse allegations would be mutually admissible in proving other counts under Rule 55, Utah Rules of Evidence. The attempt to apply the mechanical rules of evidence to such a speculative situation would place the court in an untenable situation. It is enough to observe that, were a prosecutor to attempt the introduction of evidence relating to an unproven and uncharged crime (allegedly committed by the defendant) as proof of the commission, by the defendant, of a separate and unrelated criminal offense, the trial court would be justified in regarding the probative value of such evidence to be outweighed by its prejudicial and inflammatory effect, and in excluding it under Rule 45, Utah Rules of Evidence.

While the above holding is dispositive of the present appeal, other issues raised by the defendant are herein addressed in the interest of furnishing guidance for the trial court on remand.

Defendant asserts that evidence relating to the photograph and lineup identification by prosecutrix Morris, together with her in-court identification of defendant as her assailant, should have been suppressed inasmuch as the photograph display and lineup were impermissibly suggestive.

■■■ Police identification procedures such as photograph displays, lineups, show-ups, and the like, do not deny the accused due process of law unless, under a totality of the circumstances, they are so unnecessarily suggestive and conducive to irreparable mistaken identification as to deny the accused a fair trial.[11] Where an identification procedure, even though suggestive, does not give rise to a substantial likelihood of misidentification, no due process violation has occurred.[12] In determining the reliability of the identification under the totality of the circumstances, the court must also consider the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of any prior description of the criminal, the level of certainty demonstrated during the identification procedure, and the time between the crime and the identification.[13]

■ In the instant case, defendant correctly observes that prosecutrix Morris had a very limited opportunity to observe her assailant. Her view of his face was very brief, and occurred in a darkened room immediately after she had been awakened from sleep. Such factors, however, although they may weaken the probative impact of the evidence offered, do not mandate suppression of the evidence in the name of due process without some showing that the identification procedures were themselves impermissibly suggestive. It is to be observed in this regard that the photographic display could not have been impermissibly suggestive, as prosecutrix Morris failed, as a result thereof, to identify defendant's photograph at all. Instead, she selected other photographs asserting that the individuals therein exhibited traits similar to those of her assailant. With regard to the lineup identification procedure, the defendant asserts only that the other individuals in the line were insufficiently similar to him in appearance. Such an assertion is dubious in light of the fact that defendant himself selected the other individuals to appear in the lineup. It is not the purpose of a police lineup to present a criminal victim with a procession of individuals so nearly identical as to make identification based on normal observation virtually impossible. The individuals appearing in the lineup complained of by defendant were not so different from him in appearance as to render the lineup impermissibly suggestive. As such, the admission of the lineup identification, and of the in-court identification (to the extent based thereon) were entirely proper.

■ Defendant next urges error in the trial court's failure to suppress the admission into evidence of hair samples taken from his head during the process of the investigation. Specimens of head hair were found in the bed upon which prosecutrix Nichol was assaulted. Salt Lake County Sheriff deputies secured a search warrant for the purpose of extracting hair samples from defendant in order to make a comparative analysis. Defendant urges that the warrant was invalid, and therefore the taking of the hair samples was an unreasonable search and seizure in violation of his constitutional rights.[14]

11. *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

12. *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

13. *Neil v. Biggers*, supra; *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

14. Amendments IV and XIV, Constitution of the United States.

It has generally been held that the simple extraction of hair samples from the body of an accused is so minimal and unintrusive as to be a reasonable search, even absent a warrant for the purpose.[15] We endorse this view[16] and hold that the extraction of hair samples from defendant's head did not constitute a violation of constitutional rights.

Defendant further alleges, however, that by being constrained to surrender the hair samples taken from him without his consent, he was forced to "give evidence against himself" in violation of Utah constitutional rights.[17] This Court recently made the observation that the Utah constitutional protection against giving evidence against one's self is somewhat broader than the privilege against self-incrimination provided by the Constitution of the United States.[18] Under the federal constitutional standard, no evidence emanating from the accused constitutes self-incrimination unless it is of a decidedly testimonial character (i. e., admissions, confessions, or other statements).[19] The case of *Hansen v. Owens*[20] held that an accused could not be compelled to furnish a handwriting exemplar to investigating authorities, such constituting the giving of evidence against himself in violation of Utah constitutional guarantees. That decision was, however, carefully confined to its facts. It was specifically noted that a handwriting exemplar requires an affirmative act and hence, "this case goes beyond making observations or comparison of an accused's appearance, or or his body,

or its parts or substances obtained therefrom."[21] We therefore hold that the taking of hair samples from the defendant without his consent did not constitute a violation of his right against self-incrimination.

Defendant next asserts that the trial court erred in denying a motion in limine to exclude testimony relating to defendant's prior criminal convictions. Observing that evidence of prior criminal convictions could come before the jury in the event that he elected to testify,[22] defendant urges that the trial court's refusal to grant a motion in limine with respect to those convictions denied him the right to appear and defend in person, as guaranteed by the Utah Constitution.[23]

Defendant misconstrues the nature of the constitutional right in question. The Constitution affords an accused a choice: He may refuse to become a witness, or he may elect to take the witness stand and testify in his own behalf.[24] However, if he does choose to offer himself as a witness, it has long been the law of this jurisdiction that he may be cross-examined the same as any other witness.[25] Further, as affecting his credibility, one who voluntarily takes the witness stand must answer as to the fact of prior conviction of a felony.[26] The defendant having exercised his constitutional right to remain silent and not testify, he cannot now be heard to complain that the court forced that choice upon him and thereby denied him due process.

---

**15.** *United States v. D'Amico*, 408 F.2d 331 (2nd Cir.,1969); *Bouse v. Bussey*, 573 F.2d 548 (9th Cir.,1977). It is to be observed that the exception to the warrant requirement here applied is not that of a search incident to lawful arrest, the standards for which are set out in the case of *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The standards for such a search could not extend to the hair on a person's head.

**16.** Consistent with our holding in *State v. Van Dam*, Utah, 554 P.2d 1324 (1976).

**17.** Art. I, Sec. 12, Constitution of Utah.

**18.** Amendment V, Constitution of the United States.

**19.** *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).

**20.** Utah, 619 P.2d 315 (1980).

**21.** Id.

**22.** U.C.A., 1953, 78–24–9, as amended.

**23.** Art. I, Sec. 12, Constitution of Utah.

**24.** Id.

**25.** U.C.A., 1953, 77–44–5; *People v. Hite*, 8 Utah 461, 33 P. 254 (1893).

**26.** U.C.A., 1953, 78–24–9; *State v. Bennett*, 30 Utah 2d 343, 517 P.2d 1029 (1973), cert. den. 416 U.S. 992, 94 S.Ct. 2403, 40 L.Ed.2d 771; *State v. Van Dam*, Utah, supra, note 16.

The last of defendant's assertions which we deem advisable to address relates to a requested instruction to the jury, which instruction was declined by the trial court. Defendant submitted a lengthy proposed instruction relating to the eye-witness testimony of prosecutrix Morris. The trial court declined to give the instruction, observing that the essential points contained therein were covered by other instructions. Defendant regards this omission as prejudicial error.

A criminal defendant is entitled to have a jury instructed on his theory of the case if there is any substantial evidence to justify such an instruction.[27] Where, however, the requested instruction is denied, no prejudicial error occurs if it appears that the giving of the requested instruction would not have affected the outcome of the trial.[28] Moreover, a defendant is not entitled to an instruction which is redundant or repetitive of principles enunciated in other instructions given to the jury.[29] The principal points of defendant's proposed instruction dealt with the state's burden of proof and the factors to consider in weighing the testimony of an eye-witness. All of these factors were adequately dealt with in other instructions presented to the jury by the trial court. As a result, we cannot agree that the denial of the proposed instruction constituted reversible error.

Reversed and remanded for further proceedings consistent with this opinion.

CROCKETT, C. J., and HARDING, Retired District Judge, concur.

WILKINS, Justice (concurring with comment):

I concur, but on the issue of hair samples taken from the defendant here without his consent, I rely on the grounds stated in the dissenting opinion of Justice Stewart, with which I concurred, in *Hansen v. Owens,* (Utah) 619 P.2d 315 (1980).

STEWART, J., concurs in the opinion of WILKINS, J.

MAUGHAN, J., does not participate herein.

---

27. *State v. Castillo,* 23 Utah 2d 70, 457 P.2d 618 (1969).

28. *State v. Bell,* Utah, 563 P.2d 186 (1977).

29. *Coca v. People,* 154 Colo. 488, 391 P.2d 462 (1964).