Associate Chief JUSTICE LEE,
concurring in part and concurring in the judgment:
€ 62 I concur in the judgment of the court and concur in its opinion in part. I write separately, however, because I disagree with the analysis in Part III of the majority opinion. + « -
¶63 In Part III the majority holds that Clopten lacks standing to complain about the eyewitness identification testimony of Melissa Valdez because it was the defense, and not the prosecution, that 'presented Valders identification to the jury. Supra ¶ 38. In so concluding, the court sidesteps the question whether the due process standards articulated in State v. Ramires, 817 P.2d 774 (Utah 1991), are implicated in a case in which there is no state action in the form 'of suggestlve police misconduct. _ -
'I 64 I see the matter differently. I see no basis for the decision to deem Clopten to have affirmatively advanced the eyewitness in question. Valdez was unquestionably a witness for the prosecution. And Clopten did not present her identification testimony to the jury for any of his own purposes; he only sought to undermine the credibility of her eyewitness identification on cross-examination. In deeming such cross-examination the equivalent of affirmative advancement of a witness's testimony, the court imposes a substantial (and unnecessary) burden on the exercise of the right of cross-examination. It also creates a Catch-22 for defense counsel-of either accepting the eyewitness as presented by the prosecution (while preserving the right to challenge that witness under Ramirez) or vindermining that eyewitness on eross-examination (but waiving the right to assert a Ramirez claim).
T 65 The court's analysis on this point is both legally and practically troubling. Accordingly, I would reject Clopten's claim on a different ground. I would hold that the due process standard in Ramires requires a threshold showing of police misconduct, and that Clopten's claim fails because there was nothing of that sort in this case.
I
€ 66 The briefs filed on appeal argued at length over a threshold question concerning the applicability of the standards set forth in State v. Ramires, 817 P.2d 774 (Utah 1991), in a case like this one. The question is whether the factors we identified in Ramires apply in a case in which there is no allegation of suggestive police activity. In the State's view, such activity is required because Ra-mires articulates standards for analyzing a constltutlonal due process claim, and police mlsconduct is necessary to establish the state action element of any such claim. Clopten staked out the contrary view. He asserted that Rwrmrez has been extended-and should be extended—to all cases where eyewitness 1dent1ﬁcat10n testlmony is in question. And he asked us to 'construe the Due Process Clause of the Utah Constitution to establish a standard of ewdentlary reliability even absent police misconduct.
T 67 The majority -avoids this ‘question. It does so on the ground that that Clopten has *1230 no standing to complain about Valdeg's testimony regarding the photo lineup because "it was the defense" (and not the State) who "made sure the jury knew that Ms. Valdez had identified Mr. Clopten." Supro 188. The court acknowledges that it was the State that first put Valdez on the witness stand- and elicited her testimony "that a defense investigator had presented her with a photo array, that she had recognized a person in the photo array as the killer, and that the defense investigator then told her that she wasn't going to be any help to his case.'" Supra 134. But it nonetheless concludes that the State somehow "did not intend to present Ms. Valdez's identification of Clopten to the jury," and thus that it was the defense that ultimately 'did so. Suwpro " 40.
168 I find this analysis unpersuasive, Melissa Valdez was unquestionably the prosecution's witnress, and the prosecutor's questions regarding the photo array had only one purpose-to imply that Valdez had identified Clopten. Certainly the defense understood her testimony in that way. And it accordingly went out of its way to do damage control, Its cross-examination of Valdez, however, was aimed at undermining her identification. Clearly the defense had no interest in "seek[ing] to inform .the jury that an eyewitness haldl recognized the defendant as the perpetrator." Suproe And the prosecution had a clear incentive to do so; it's hard to imagine any other reason for presenting this evidence to the jury.
T69 I suppose there is a sense in which "it was the defense that made sure the jury knew that Ms. Valdez had identified Mr. Clopten," Supro 188, But the defense's cross-examination of Valdez was hardly'ﬁn-tend/ed] to present Ms. Valdes's identification of Clopten to the jury." Suwpro T40 (emphasis added). It was aimed at undermining the (implied) identification presented in Valdez's direct-examination. ' So if the question is which side-prosecution or de-fenge-introduced Valdez's identification to the jury, there can, be only one answer. It was clearly the prosecution.
T 70 We create perverse incentives in holding the contrary. Under the majority's rule, a defense lawyer will act at his peril in pursuing the course of undermining an eyewitness for the prosecution. Cross-examination for the purpose of damage control will risk waiver of a due process claim under Ramirez.
1.71 I see no reason to put defense lawyers in this quandary. We can avoid the problem by resolving the case on the straightforward ground that the due process standard in Ramirez is triggered only by state action in the form of police misconduct. I would so hold, for reagons explained below.
II
€ 72 Our cases in this area are not a model of clarity. On one hand, Clopten is right to note that our cases at least arguably suggest that Ramirez: may extend to cases where-police misconduct is absént. Yet the State, for its part, correctly notes that standard due process analysis would require suggestive police activity, and that we have never squarely held the contrary,. . We should resolve this issue. It is squarely presented and well-briefed. And putting it off will sow the seeds of confusion in our lower courts going forward.
173 Ramires involved "blatant [police] suggestiveness" in the course of a police "showup"-a point the court deemed "most criticall ] for purposes of this case." State v. Romires; 817 P.2d T4, T77, 484 (Utah 1991). Yet Clopten is right to note that Ramérez did not expressly establish police misconduct as a threshold requirement, And: it is true that: the Ramires factors have been applied in some subsequent cases in which suggestive police activity is missing.[3]
I 74 That said, our court has never squarely addressed the question presented in this
*1231 case under the Due Process Clause of the Utah Constitution. Ramirez itself involved suggestive activity by the police, so there was no reason in that case for us to address that question. And in introducing its discussion of reliability, the Ramirez court framed the matter as "the analytical model to be used by a trial court in determining the admissibility of arguably suggestive eyewitness identifications." Id. at 779 (emphasis added). It also emphasized that the factors it identified "departed] from federal case law omly to the degree that [it] flou)nd the federal analytical model scientifically> unsupported." Id. at 780 (emphasis added).
T75 The federal model, moreover, is one that unequivocally requires threshold proof of state action in the form of police misconduct. That was our conclusion in State . McCumber, 622 P.2d 353, 357 (Utah 1980). In McCumber we acknowledged that factors undermining an eyewitness identification's reliability "may weaken the probative impact of the evidence offered," but concluded that such considerations "do not mandate suppression of the evidence in the name of due process without some showing that the identification procedures were themselves imper-massibly suggestive." Id. (emphasis added). Under that standard, our decision in McCumber rejected a due process challenge to an eyewitness identification made pursuant to a photographic display and subsequent lineup performed by the police because it found that neither was "impermissibly suggestive." Id..
T 76 The McCumber decision appears to be based on the Due Process Clause of the U.S. Constitution. And 'in interpreting the Utah Constitution, 'we are by no means bound to follow federal caselaw. Our prerogative of interpreting the state constitution is not a license to make policy, however; it is a charge to interpret. Clopten, moreover, has proffered no basis for reading the words of the Due Process Clause of the Utah Constitution in a manner inconsistent with the traditional understanding of "due process" (which requires proof of suggestive police activity). And absent such a basis, I would construe the Utah Due Process Clause to be in line with its federal counterpart.
177 Historically, the guarantee of due process has been understood as a bar on state action that deprives a protected party of "life, liberty, or property, without due process of law." [4] 'This is not 'a sweeping charter for judges to assure fairness by excluding evidence that may be of questionable reliability in light of emerging principles of social science. - It is a§ a limitation on government action depriving a person of the traditional components of "due process," such as the right to reasonable notice and'a meaningful opportunity to be heard.[5]
T78 I see no basis for extending this longstanding view of due process to establish an omnibus guarantee of evidentiary reliability. Nor do I see a limiting principle om such a slippery slope.
- T79 Our law has never, required trial judges to make: independent assessments of evidentiary reliability based on an informed understanding of social science. Instead we require judges simply to follow the law of evidence,; and to rule on counsel's objections thereunder. A judge is accordingly a state actor to the extent he. is performing the duties our law expects of him. But it makes no sense to charge the judge, as Clopten suggests, with a due process obligation to foreclose the admission of evidence that is perfectly admissible under the law as it cur *1232 rently stands. That is not the judge's job under longstanding rules of evidence, and it cannot therefore be his job as a matter of due process.
¶80 Any concerns about our current law, moreover, can and should be dealt with by an amendment to our rules of evidence. We would loge the many virtues of that system- and thwart the reliance interests of parties and lower courts-if we required judges to make rules of evidence on the fly based on evolving social science.
T 81 In any event, established caselaw forecloses the conclusion that the admission of unreliable evidence is state action infringing a defendant's right to due process. Unreliability is not the touchstone of a due process challenge to the admission of evidence. State action is. See Colorado v. Connelly, 479 U.S. 157, 164, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986) (upholding admission of privately coerced confession against due process attack given the lack of state action); Mooney v. Holohan, 294 U.S. 103, 112, 55 S.Ct. 340, 79 L.Ed. 791 (1935) (concluding that only the knowing presentation of perjured testimony implicates due process).
82 This principle dooms Clopten's position. If we are to remain consistent to the historical understanding of due process, we cannot hold that it guarantees a defendant that only reliable evidence will be admitted against him. Coerced confessions and perjured testimony are undoubtedly unreliable. Yet they do not implicate due process unless they are actively, knowingly proffered by the State. See Connelly, 479 U.S, at 164, 107 S.Ct. 515 ("Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law."); Mooney, 294 U.S. at 113, 55 S.Ct. 340 (requiring knowing presentation of perjured testimony; emphasizing that due process governs only the "action of a state").
{ 83 I would apply this principle here. I would hold that the Utah Constitution's Due Process Clause is not a guarantee of eviden-tiary reliability but a bar to state action in knowingly presenting unreliable evidence. And I would reject Clopten's challenge to Melissa Valdez's testimony on that basis.

. State v. Decorso, 1999 UT 57, §47, 993 P.2d 837; State v. Hubbard, 2002 UT 45, 11 25, 48 P.3d 953; State v, Hollen, 2002 UF 35, 1164, 44 P.3d. 794; ' State v. Willett, 909 P.2d 218, 224 (Utah 1995), 00 . .c 2000 4a

. - Urar Const. art. I, § 7. See Mathews v. Eldridge, 424 U.S. 319, 332, 96 S.Ct. 893, 47 LBd.2d 18 (1976) ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." (emphasis added)). '

. See Perry v. New Hampshire, - U.S. --, 132 S.Ct. 716, 720-21, 181 L.Ed.2d 694 (2012) (holding that due process concerns, absent "the presence of [suggestive] state action" relating to an eyewitness identification, are met by the traditional guarantees of a "fair trial" embedded in ' the Sixth Amendment, such as "the right to counsel, compulsory process to obtain defense witnesses, and the opportunity to cross-examine _. witnesses for the prosecution").