STATE of Utah, Plaintiff and
Respondent,

v.

Timothy M. LAIRBY and Mildred R.
Lairby, Defendants and Appellants.

No. 18998.

Supreme Court of Utah.

Dec. 31, 1984.

Timothy Lairby, pro se.

Roger Taylor Nuttall, Salt Lake City, for defendants and appellants.

David L. Wilkinson, Atty. Gen., Dave B. Thompson, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

DURHAM, Justice:

Appellant Timothy M. Lairby appeals his conviction of rape under U.C.A., 1953, § 76–5–402 (1978), forcible sexual abuse under § 76–5–404 (1978), and forcible sodomy under § 76–5–403 (1978). Appellant Mildred R. Lairby appeals her conviction of forcible sexual abuse under § 76–5–404 (1978). Appellants have filed a *pro se* brief, signed only by Timothy Lairby, and a supplemental memorandum of points and authorities prepared by counsel. We have consolidated the claims where appropriate and will address them in the following order: judicial error, ineffective assistance of counsel, credibility of certain testimony, and insufficiency of the evidence to support the verdicts.

The charges against Mildred Lairby involve sexual abuse of her four-and-a-half-year-old stepdaughter, Virginia Lairby. The charges against Timothy Lairby involve sex crimes against his natural daughter, Virginia, and his eight-year-old stepdaughter, Carri Long. Carri is Mildred Lairby's natural daughter.

Wanda Lairby, Virginia's natural mother, was divorced from Timothy Lairby in December 1980. Wanda Lairby retained temporary custody of the Lairby children, and Timothy Lairby was granted visitation rights every Saturday from noon to six p.m. and from Friday until Sunday at six p.m. on the third weekend of each month.

Timothy and Mildred Lairby were married in February 1981. It was during the weekend visits at defendants' home that the alleged sexual abuse of Virginia occurred. Carri Long resided with Mildred and Timothy Lairby during the period she was allegedly victimized.

On April 19, 1981, at her home following a visit with her father and stepmother, Virginia complained to Wanda Lairby that her "privates hurt." Virginia testified at trial that her privates began to hurt after she slipped and fell in the tub while taking a bath and that the pain made her think of what Mildred Lairby had done to her during Virginia's most recent visit. Virginia testified that Mildred Lairby stuck a fork in her privates in the bathroom of Timothy and Mildred Lairby's home on Easter Sunday (April 19) 1981. Virginia further testified that the fork caused her to bleed so that she had to wash the blood out of her panties and that Mildred put an ice cube on her privates to stop the bleeding, telling her that she would give her candy and she should "forget" the incident. Virginia stated that Timothy Lairby was present on this occasion and that he helped Mildred Lairby hurt her.

Wanda Lairby testified that she took Virginia to the hospital on April 20. Dr. Elmo Grewell, the examining physician, testified that redness existed around the mucous membrane of Virginia's vagina, but he was unable to categorically state whether or not molestation had taken place based on Virginia's physical condition.

Virginia testified that Timothy Lairby had hurt her several times. Virginia testified she had seen appellant's penis, she knew its anatomical location, she drew it for defense counsel, she remembered the penis as being hard when it touched her, and she recalled that she was hurt and cried when the penis touched inside her vagina. Virginia made graphic references to the seminal emission from defendant's penis, describing it as a yellow-brown mix and stating that the penis "puked" all over her privates so that she had to wash it off. She also recounted other episodes when

Timothy Lairby touched her privates with his finger and when he "sucked" her privates.

Carri Long testified that she was sexually abused by Timothy Lairby. Carri testified that she had seen his penis, and she observed him holding his penis with his fist. She also stated that on the weekend following her birthday, defendant laid her on a bed, pulled off her pants and underwear, exposed himself to her, and touched her vagina. Carri testified that on another occasion Timothy Lairby removed her clothes again and proceeded to touch the inside of her vagina with a plastic object.

Both defendants testified, generally, that the incidents did not happen, that Virginia is an imaginative child, and Carri is an habitual liar. Four character witnesses testified to the effect that the Lairbys appeared to have a normal family life and were active in their church and neighborhood.

## I. Judicial Error

### A. Legality of Arrests

■ Defendants contend that the State did not comply with U.C.A., 1953, § 77–1–3(3) (1982), requiring that informations be "presented and signed by a prosecuting attorney." The informations were subscribed and sworn to by Guy W. Blunk, a police officer, before a circuit judge. On the back side of the informations appears the statement, "Authorized for presentment and filing: Ted Cannon, County Attorney," and the personal signature of "W.C. Gwynn, Deputy." In *State ex rel. Cannon v. Leary*, Utah, 646 P.2d 727, 730 (1982), this Court determined that the requirement of § 77–1–3(3) is met by an information being sworn to by a person having reason to believe the offense has been committed and authorized by a prosecuting attorney. Thus, the informations in the present case met the necessary legal requirements. Moreover, defendants waived any objections to defects in the informa-

tions where they made no objections to the informations either before or during trial. *See State v. Hall*, Utah, 671 P.2d 201, 202 (1983); Utah R.Crim.P. 12(b)(1), (d).

■ Defendants also argue that there was no probable cause for their arrests. A defendant's failure to object to the legality of his arrest prior to trial constitutes a waiver of that issue. Utah R.Crim.P. 12(b)(1), (d). In the present case, defendants waived any objections to the legality of their arrests.

### B. Preliminary Hearing

■ Defendants next contend that they were denied their due process rights with respect to their preliminary hearings. Specifically, their charges include the following: the prosecution suppressed mitigating evidence at Mildred Lairby's preliminary hearing; the court improperly admitted affidavits of Carri Long referring to her victimization; and there was insufficient evidence to establish probable cause.

■ In support of their argument, defendants have attached their own (uncertified) copies of a partial transcript of the preliminary hearings. In doing so they have not complied with Utah R.Civ.P. 75(m). Nowhere in the record is it established that the State or the court has approved the transcripts, and the transcripts were not made a part of the record. Defendants' assignments of error cannot be considered by this Court in the absence of record evidence. *See State v. Jones*, Utah, 657 P.2d 1263, 1267 (1982).[1]

### C. Speedy Trial

■ Defendants next contend they were denied their constitutional right to a speedy trial. Mildred Lairby was arrested May 14, 1981, and Timothy Lairby was arrested July 22, 1981. Both were tried in the same proceedings on October 26, 1982.

---

**1.** Furthermore, a reading of the noncomplying transcript reveals sufficient evidence to bind

over.

They rely on *Cain v. Smith,* 686 F.2d 374, 381 (6th Cir.1982), which lists the following factors as probative in evaluating whether the right to a speedy trial has been violated: length of delay, reasons for delay, whether defendant asserted his or her right to a speedy trial, and whether defendant was prejudiced by the delay. *Accord State v. Knill,* Utah, 656 P.2d 1026, 1029 (1982).

The continuances, except for those on the court's own motion due to a crowded calendar, were stipulated to by defendants' counsel. One continuance was at defendants' request. Defendants admit that their counsel advised them that time was in their favor, but that "in hindsight," defendants now believe the lapsed time was "a conscious, wilfull [sic], and purposeful act on the part of the Deputy County Attorneys involved to gain a tactical advantage over the accused," specifically, to allow the coaching of the child witnesses in their testimony.

This Court has held that a defendant who has not asserted his or her right to a speedy trial in the lower court has waived the right to raise the issue on appeal. *State v. Sparks,* Utah, 672 P.2d 92, 94 (1983). Thus, in the present case defendants waived a speedy trial because they did not assert their rights below and because their counsel stipulated to the continuances.

Finally, defendants' claim of prejudice is unsubstantiated. Whether the victims fabricated the incidents was a decision for the trier of fact. Additionally, both defendants were granted pretrial release and were therefore not prejudiced by having been incarcerated for an unconscionable period of time.

■ For the same reasons, defendants' argument that Timothy Lairby's preliminary hearing was delayed unreasonably is without merit. The parties stipulated to the continuances, no objection was made

below, and there is no showing of prejudice.

### D. Jurisdiction

■ Defendants also contend the district court lacked jurisdiction over them because there was only a circuit court information and no district court information reciting that defendants were bound over to that court. Defendants rely on a former Utah Code provision, U.C.A., 1953, § 77–17–4 (1978), requiring the recitation of the binding over on an information.

■ The Utah Code of Criminal Procedure was revised effective July 1, 1980, and the foregoing provision was repealed. 1980 Utah Laws ch. 15, § 1. Defendants were arrested in 1981, and therefore the old provision was not in effect. Moreover, even under the former code provision, failure to make a timely objection to the information constitutes waiver. *State v. Anderton,* 69 Utah 53, 64–65, 252 P. 280, 284 (1926). This point is therefore without merit.

### E. Depositions of State Witnesses

■ Prior to trial, defense counsel filed a notice of taking depositions of Carri and Tracy Long, the latter being the older child of Mildred Lairby. It was served on the social worker supervising the girls, who had been placed in shelter, with a copy to the prosecuting attorney. The girls did not appear, and no one appeared on behalf of the State.[2] Defendants brought a motion to compel, which the court denied, saying that defendants were entitled only to a list of prospective witnesses under U.C.A., 1953, § 77–35–16 (1982).

Defendants contend their rights were abridged by this denial, citing U.C.A., 1953, § 77–35–14(h) (1982), which states:

> Whenever a material witness is about to leave the state ... as to afford reasonable grounds for believing that he will be unable to attend a trial or hearing, either party may, upon notice to the other, ap-

---

**2.** Defendants, in their brief, state that the prosecuting attorney called defense counsel the day of the scheduled depositions and said that he

would not honor the subpoena and defense counsel would have to content himself with cross-examining the girls "when the time came."

ply to the court for an order that the witness be examined conditionally by deposition. Attendance of the witness at the deposition may be compelled by subpoena. The defendant shall be present at the deposition and the court shall make whatever order is necessary to effect such attendance.

Utah R.Crim.P. 14(h).

Tracy and Carri in fact departed from the state to Arizona approximately one month later. Carri testified at trial, but Tracy did not.[3]

Defendants' motion to compel did not recite that a material witness was about to depart the state, nor did it cite § 77–35–14(h) as grounds for the motion. The trial court, the State argues, could not be expected to apply § 77–35–14(h), since it had not been advised at the time the motion was presented that the witnesses were about to leave the state. We agree.

■ In general, a trial court is allowed broad discretion in granting or denying discovery, U.C.A., 1953, § 77–35–16(f) (1982), and "its determinations on this subject will not be overturned on appeal unless the court has abused its discretion." *State v. Knill*, Utah, 656 P.2d 1026, 1027 (1982); *see also State v. Sims*, 30 Utah 2d 357, 360, 517 P.2d 1315, 1317, *cert. denied*, 417 U.S. 970, 94 S.Ct. 3175, 41 L.Ed.2d 1141 (1974). Moreover, defendants have not shown how they were prejudiced by the denial. The defense had the opportunity to confront Carri Long when she testified at trial and had the right to secure the attendance of Tracy Long from out of state on their own behalf had there been a likelihood that her testimony would have been exculpatory. Since she did not testify at trial, there was no need to cross-examine her on damaging testimony. Under the circumstances, the trial court did not abuse its discretion in denying defendants' motion.

### F. Eight-Member Jury

■ Defendants argue that the trial was heard by an unconstitutional panel of jurors, composed as it was of eight members. Article I, § 10 of the Utah Constitution provides:

In capital cases the right of trial by jury shall remain inviolate. In courts of general jurisdiction, except in capital cases, a jury shall consist of eight jurors.

Thus, the Utah Constitution permits a panel of eight jurors in noncapital criminal cases. *See also* U.C.A., 1953, § 78–46–5 (Supp.1983). In *Williams v. Florida*, 399 U.S. 78, 103, 90 S.Ct. 1893, 1907, 26 L.Ed.2d 446 (1970), the United States Supreme Court held that a jury of six persons in a criminal case is constitutional. In *Johnson v. Turner*, 429 F.2d 1152, 1154 (10th Cir. 1970), the Tenth Circuit specifically ruled, in light of the *Williams* holdings, that the eight-juror panel for noncapital offenses under the Utah Constitution is constitutional. Defendants therefore have no valid sixth or fourteenth amendment claim.

### G. Admission of Psychologist's Deposition

■ Defendants contend the lower court erred by not admitting into evidence the "contents" of the deposition of an Arizona psychologist, Dr. Clinton Street. Nowhere in the record can we find an attempt by defendants to introduce Dr. Street's deposition, and it appears that only one reference was made to its "contents." In cross-examining Richard Long, the former husband of defendant Mildred Lairby, defense counsel referred to the "report" of the psychologist. The prosecutor objected to any testimony about the report on the ground that the psychologist was not present, and the objection was sustained. In the absence of an attempt to introduce the deposition, we will not consider defendants' arguments under Utah R.Evid. 63(3), 9B U.C.A., 1953 (1977).

### H. Out-of-State Witness

■ Defendants claim the trial court erred by refusing to secure the attendance

---

**3.** Defendants asked the court after the trial began to require Tracy Long to be a witness for the defense. This matter is addressed hereafter in this opinion as a separate issue.

of an out-of-state witness, Tracy Long, the natural daughter of Mildred Lairby, who resided with defendants during the period when the alleged events occurred. Defendants argue that they were entitled to have the court issue a certificate ordering her attendance from Arizona pursuant to U.C.A., 1953, § 77–21–3 (1982).

▮ The record discloses that on the second day of trial, defendants, upon noting Tracy Long was not present, made an oral request to the court that she be subpoenaed from Arizona. Defense counsel did not apprise the trial court that he sought an order compelling the attendance of an out-of-state witness at an in-state criminal proceeding pursuant to § 77–21–3. Moreover, no showing was made before the lower court, nor has one been made on appeal, that Tracy Long was a material witness as required under the Act. No proffer was made regarding the contents of her testimony. A mere allegation of materiality does not justify a finding that a witness is material. *See People v. Nash*, 36 Ill.2d 275, 281, 222 N.E.2d 473, 476 (1966), *cert. denied*, 389 U.S. 906, 88 S.Ct. 222, 19 L.Ed.2d 681 (1967). On appeal, defendants likewise merely allege "materiality." No description of the witness' evidence is offered, and no suggestion is made as to how her testimony would affect defendants' case. Under the circumstances, there is no showing of prejudice, and the trial court's refusal was not erroneous.

## I. Right of Confrontation

▮ Defendants claim they were denied their constitutional right of confrontation by the trial court's unduly restricting defendants' cross-examination of the State's witnesses and by restricting the direct testimony of defendants' witnesses on the question of the credibility of the State's witnesses.

On cross-examination, defendants sought testimony that would have suggested that their former spouses had conspired to fabricate the incidents of sexual abuse and had coached the two children accordingly. The motivation, defendants claim, was to deprive Timothy and Mildred Lairby of the custody of their children.

▮ "The exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *State v. Chesnut*, Utah, 621 P.2d 1228, 1233 (1980); *see also State v. Maestas*, Utah, 564 P.2d 1386, 1387–88 (1977). This principle is subject to the limitation, however, that a defendant is not entitled to embark on "fishing expeditions." *State v. Clayton*, Utah, 658 P.2d 621, 623 (1983).

Our review of the record discloses that the specific errors complained of either were waived, were not errors, or were not prejudicial. On recross-examination, defense counsel was able to explore the collusion theory with little or no objection. The net result was that defense counsel had sufficient opportunity to develop the collusion theory in his evidence and certainly to argue it to the jury.

We also disagree with defendants' contention that the direct examination of Mildred and Timothy Lairby was unduly restricted. Essentially defendants had a full opportunity to offer any evidence of the alleged conspiracy. The only negative behavior defendants were able to testify to on the part of their former spouses was behavior after the charges were made, which was irrelevant to defendants' theory.

We conclude that the instances cited by defendants were either not error or were harmless error. *See Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *accord State v. Chesnut*, Utah, 621 P.2d 1228, 1233 (1980).

## J. Testimony Regarding Incidents Not Charged

Defendants contend that Virginia Lairby testified to several incidents of sexual abuse that were not charged in the informations. The charges relating to Virginia Lairby were: rape by Timothy Lairby, forcible sodomy by Timothy Lairby, and forcible sexual abuse by Timothy Lairby and

Mildred Lairby. A review of the record discloses the following:

 1. What defendants characterize as "different" incidents of abuse testified to by Virginia Lairby are, in several instances, the same incident, relating to the forcible sexual abuse charge. Virginia Lairby, who was six years old at the time of trial, testified on direct examination and cross-examination. Cross-examination was continued after an evening recess, then the court heard redirect examination and re-cross-examination. Occasionally when Virginia was asked to retell what happened, a detail was added. For example, in the second telling of the "bathroom incident," Virginia told of Mildred Lairby putting an ice cube on Virginia's vagina to stop the bleeding. Other changes in details arguably created discrepancies in her testimony. These affect credibility, but they certainly do not represent separate charges against defendants about which they were not given notice. Defendants themselves in their brief sometimes argue this claim as a problem of credibility, suggesting that their view of the nature of the testimony comports with ours.

2. The rape and sodomy incidents to which Virginia Lairby testified, and about which defendants complain, were charged.

3. The remaining testimony about which defendants complain consists of the following: (a) Virginia Lairby, when asked where Mildred was during an incident she was describing, said, "She was hurting Tracy upstairs." The prosecutor had asked the question in response to defense counsel's request that the witness establish who was present during the incident being described. The prosecutor did not follow up on the comment regarding Tracy. (b) The prosecutor asked how many times she had been hurt at Tim's house. Defense counsel did not object to the question. Virginia Lairby answered, "Almost a hundred." She did not recount any of these incidents, and the prosecutor did not ask her to.

 Throughout Virginia Lairby's testimony, defense counsel objected on the basis of a lack of foundation because the six-year-old witness was not able to state the precise dates on which the abuse occurred. The court sustained many of those objections, resulting in some confusion as Virginia would begin again to try to describe what had happened to her. The inability of a six year old to fix the dates of incidents that occurred when she was four is both entirely consistent with a young child's lack of a frame of reference for the passage of time and irrelevant to the charges here, because the time of the alleged incidents had been generally fixed by other witnesses.[4]

### K. Psychological Evaluation of State Witnesses

Defendants in their *pro se* brief claim that the court below erred in denying their motion for "further" psychiatric evaluation of Virginia Lairby and Wanda Lairby. In their supplemental memorandum, defendants appear to be contesting the denial of the motion only as to Virginia Lairby, a "complaining witness."

The record discloses the following chronology relating to this claim of error: On July 11, 1981, the defense, on behalf of Mildred Lairby, motioned the court to require a psychiatric evaluation of Virginia Lairby and Wanda Lairby "in the interest of justice." There is no record of any action on that motion or effort to have it heard.

On March 14, 1982, defense counsel, on behalf of Mildred Lairby (the cases of Mil-

---

4. The court incorrectly sustained defense counsel's constant objections regarding specific dates. The time of the commission of the offense need not be alleged unless necessary to charge the offense. *State v. Bundy*, Utah, 684 P.2d 58, 61 (1984) (citing Utah R.Crim.P. 4(b)). The informations properly recited "on or around" certain dates, *see State v. Woolsey*, 19 Utah 486, 492, 57 P. 426, 427 (1899), and the prosecution, dealing as it was with a young child, by reference to particular occurrences such as Easter, more than satisfied defendants' right to have notice of the time of the crime charged. Defendants did not at trial, nor do they now, raise any defense of alibi.

dred Lairby and Timothy Lairby had not yet been joined), requested a continuance of the trial of Mildred Lairby on the ground that additional time was required in order to conduct a psychological evaluation of Wanda Lairby. The prosecution did not object, and the continuance was granted. Wanda Lairby submitted to a psychological evaluation on June 7 and 10, 1982.[5]

On the second day of trial, October 27, 1982, defense counsel moved to have the court compel psychiatric evluations of Virginia Lairby and Wanda Lairby. As a ·factual basis for the motion, defense counsel offered the June 1982 evaluation of Wanda Lairby.[6] The court responded: "[T]here is nothing before the Court at this time that indicates that the child [Virginia Lairby] was influenced in any manner whatsoever by her mother as to her testimony."

■ Because the defense did arrange for Wanda Lairby to be evaluated psychologically and because defendants did not, in either the *pro se* brief or the supplemental memorandum, offer any basis for compelling Wanda Lairby to submit to further evaluation, we consider the claimed error only as to a psychiatric evaluation of Virginia Lairby.

■ Defendants rely on *Ballard v. Superior Court*, 64 Cal.2d 159, 410 P.2d 838, 49 Cal.Rptr. 302 (1966), for the proposition that "the trial judge should order a psychiatric examination of the complaining witness in a case involving a sex violation if the defendant presents *a compelling reason* for such an examination." Utah has never adopted such a rule requiring a psychiatric evaluation of a prosecutrix in a sex violation case. Nor do we find it necessary or appropriate to adopt such a rule.

With respect to a defendant's right generally to compel a psychiatric evaluation of a witness, this Court has stated:

> [I]f it were made to appear that there is a substantial doubt that a witness is capable of understanding and appreciating the duty to tell the truth, or that he is able to perceive, remember and communicate facts with reasonable accuracy, the trial judge might grant a request for [a psychiatric] examination before permitting him to testify.... [T]he determination as to whether such an examination should be had must necessarily rest largely within the discretion of the trial judge.

*State v. Hubbard,* Utah, 601 P.2d 929, 930 (1979). *See* U.C.A., 1953, § 78–24–1 (1977); Utah R.Evid. 8, 17, 9B U.C.A., 1953 (1977). Thus, the question we must decide is whether the trial judge abused his discretion in determining that defendants did not raise a substantial doubt as to Virginia Lairby's mental condition as affecting her veracity.

Defendants did not raise at trial, nor are they able to do so now, a substantial doubt as to Virginia Lairby's mental condition as it affected her appreciation for telling the truth. At trial, the defense was apparently satisfied that Virginia was qualified to testify, no objection to her competence being made. She was also subject to extensive cross-examination during which defense counsel was persistent in his questions regarding the source of her testimony. She described her relationship with her mother and the conversations between them to "help" Virginia remember the facts. She remained firm, however, that the experiences she described actually occurred. Moreover, her testimony was corroborated by that of Carri Long. Defendants offered no evidence that Virginia Lairby had any

---

**5.** A copy of the evaluation report, never admitted into evidence or made a part of the record in this case, is attached as an exhibit to defendants' *pro se* brief.

**6.** Defense counsel did not point out any specifics of the report that would demonstrate that a psychiatric evaluation of Virginia Lairby or further evaluation of Wanda Lairby was warrant-

ed, and the report reveals no such specifics. Defense counsel merely suggested his own view that further evaluation might reveal the existence of a so-called *folie a deux,* i.e., similar delusional ideas, between the mother and daughter. Nothing supporting such a theory appears in the report of Wanda Lairby's evaluation.

history of mental problems or had previously acted out any of her mother's alleged hostilities toward her father. Defendants testified that Virginia Lairby was very imaginative, but neither was able to describe any events or behaviors unusual for a four year old. Under the circumstances, defendants did not raise a substantial doubt as to Virginia Lairby's suffering a mental aberration affecting her veracity.

### L. Joinder of Offenses

Defendants argue that the single information filed against Timothy Lairby improperly joined the several charged offenses and that appellants were improperly joined for trial.

 Utah R.Crim.P. 12(b)(1) requires a defendant to make a timely objection to any defects in an information. *Accord State v. Hall,* Utah, 671 P.2d 201, 202 (1983). Rule 12(b)(4) requires a defendant to make requests for severance of charges at least five days prior to trial. *See also* Utah R.Crim.P. 9(d). Timothy Lairby, who made no objection to the information as required by Rule 12(b)(1) and who made no request for severance of charges as required by Rule 12(b)(4) and Rule 12(d), has waived the right to raise the issue of misjoinder of offenses on appeal.

We note that in *State v. McCumber,* Utah, 622 P.2d 353, 356 (1980) (footnote omitted), this Court recognized that "[w]hile the fundamental right to due process may in fact be waived, such waiver may not be presumed absent a showing that it was knowing and voluntary." In *McCumber,* a motion to sever the counts of the information for separate trial was filed subsequent to entry of not guilty pleas, but prior to trial. The lower court had found the motion not timely made under former U.C.A., 1953, § 77–23–10 (1978). In the present case, defendant Timothy Lairby made no motion to sever. Indeed, the de-

fense stipulated to a joinder of offenses and defendants just prior to trial. Moreover, the counts charged against the defendant in *McCumber,* unlike the present case, were alleged as separate, diverse instances of criminal behavior. The two complainant witnesses in that case were not involved in the same alleged criminal acts, as is true in the present case. Therefore, defendants' claim of improper joining of offenses against Timothy Lairby is without merit.

 Likewise, because no pretrial motion for severance of defendants was made, defendants waived the issue of misjoinder of defendants at trial under Rules 9(d), 12(b)(4), and 12(d). In addition, appellants knowingly and voluntarily waived any due process right when they stipulated to a joinder of defendants. *Cf. McCumber,* 622 P.2d at 355–56.

### M. Quashing of Psychologist Subpoena

 Defendants claim the lower court erred in quashing a subpoena requiring the attendance at trial of Dr. Barbara Liebroder, a licensed psychologist, on behalf of defendants. As indicated earlier in this opinion, Dr. Liebroder had conducted a psychological evaluation of Wanda Lairby pursuant to an apparent agreement between the former prosecutor on the case and the defense. Defendants paid for the evaluation, and a copy of the written evaluation was ordered to be given to defendants just prior to trial.

Dr. Liebroder planned to attend the trial on October 28, but was notified by defense counsel to appear instead on the morning of October 29. Counsel for Dr. Liebroder appeared on her behalf on October 29 and moved to quash the subpoena.[7] The trial judge questioned defense counsel with respect to Dr. Liebroder's proposed testimony.[8] Defense counsel stated that the eval-

---

7. The grounds for the motion were (1) Dr. Liebroder had not been tendered an expert fee but merely a $16 witness fee, and (2) she would refuse to testify, claiming psychologist-client privilege.

8. The trial judge stated he was "not really interested" in the grounds for quashing the subpoena raised by Dr. Liebroder and instead asked defense counsel, "What is the basis that you think

uation had been done to determine Wanda Lairby's competency to testify, specifically directed to a possible mental condition affecting her veracity. Defense counsel did not allege that the report revealed Wanda Lairby was indeed suffering such an aberration, but that the report was sufficiently suggestive to make Dr. Liebroder's testimony relevant and material.[9] Defense counsel admitted that Dr. Liebroder's conclusions were not made known to him,[10] but he argued that defendants were entitled to "put her on the stand" and any admissibility issues could be resolved there. The court granted the motion to quash after stating:

> There is no law I know of that permits somebody to come into this court and usurp the prerogative of the jury and tell the jury whether or not someone is telling the truth or whether they're fantasizing or whether they were able to influence someone else.

Thus, the court granted the motion to quash based on its own ground.

Defendants argue that the trial court's decision is directly inconsistent with *State v. Miller*, Utah, 677 P.2d 1129 (1984), where, they assert, this Court held admissible a psychiatrist's opinion concerning the credibility of a witness (the defendant) and the witness' tendency to fantasize. Defendants misstate the *Miller* holding. In *Miller*, the psychiatric testimony concerned the defendant's peculiar personality trait that affected his reality-testing abilities and created a long-standing tendency to fantasize. "Such testimony," we stated, "would have allowed the jury to better consider whether Miller possessed the specific intent necessary to conspire to burn his store ..." and "would also have been strongly corroborative of Miller's claims that he was only fantasizing in his discussions with Stewart and that he never had

any intention of acting on any of their ideas or conversations." *Id.*, 677 P.2d at 1132.

In the present case, the defense wanted to offer expert testimony on the question of whether Wanda Lairby suffered from a mental condition which affected the truthfulness of her own testimony and that of her daughter Virginia. Dr. Liebroder might have been able to testify about Wanda Lairby's psychological capacity for untruthfulness or delusional testimony, but Dr. Liebroder could not have offered any views on the testimony actually given. The testimony was apparently intended as an expert opinion on the credibility or lack thereof of both Wanda and Virginia Lairby. There having been no indication whatsoever in the evidence that either Wanda or Virginia suffered from some mental aberration requiring the analysis of a psychiatric expert, we are unable to see error in the trial court's refusal to permit such expert testimony relating solely to credibility.

Furthermore, even if the trial court erred in excluding the testimony, we are unpersuaded that such testimony could reasonably have resulted in a different verdict. Dr. Liebroder's testimony would have concerned Wanda Lairby's mental condition, but there is absolutely no basis [11] for concluding that it would have helped defendants' theory. Moreover, there was no evidence of Wanda Lairby exhibiting any hostility or aggression toward her husband vis-a-vis the children at any time previous to the investigation of these charges. There was no evidence of prior conflicts between Timothy and Wanda Lairby with respect to the Lairby children and Virginia in particular. Virginia Lairby's testimony was sufficiently credible and consistent to appear unrehearsed and not the result of coaching and was corroborated in many

<hr>

you can get this psychological evaluation in evidence?"

**9.** Defense counsel proffered the report to the judge for his consideration, but the latter apparently declined to examine it.

**10.** He had received the report from the prosecutor, who was ordered by the court to produce it only a couple days prior to trial.

**11.** Dr. Liebroder's report, attached as an exhibit to the *pro se* brief, nowhere states or suggests that defendants' allegations regarding Wanda Lairby's delusions had any basis in fact.

essential respects by the testimony of Carri Long. Dr. Liebroder's testimony would have, at most, been speculative and of little or no assistance to the jury in their evaluation of defendants' "conspiracy" theory.

### N. State Expert Testimony

Defendants claim the trial court abused its discretion and committed prejudicial error by admitting the testimony of Dr. William Palmer that, in his expert opinion, Virginia Lairby was, "in all probability," a victim of sexual abuse. Defendants contend that Dr. Palmer should not have been allowed to give his opinion because (a) no foundation was given as to Dr. Palmer's qualifications to diagnose the occurrence of sexual abuse in the absence of physical injuries; (b) insufficient foundation was laid as to whether statements made by Virginia Lairby to him are typically relied upon by experts in determining whether sexual abuse has occurred; and (c) no foundation was provided "to show why Dr. Palmer would be more qualified to give an opinion as to whether [Virginia] Lairby was telling the truth."

■ The record substantiates defendants' first contention, that the prosecutor laid an inadequate foundation with respect to Dr. Palmer's expertise in diagnosing sexual abuse relying on verbal and behavioral evidence. Dr. Palmer testified that he is the medical director of outpatient ambulatory medicine at Primary Children's Hospital and an associate professor of Pediatrics and Family Practice at the University of Utah School of Medicine. He also stated that he is a member of the child protection team of both institutions and that the teams consist of pediatricians, psychiatrists, and medical social workers. That was the extent of his testimony regarding

his qualifications when the prosecutor proceeded to question Dr. Palmer about his examination of Virginia Lairby. The record also reveals, however, that defendants made no objection to Dr. Palmer's qualifications to testify. In the absence of a timely objection, defendants waived any right to appeal this point.[12]

■ Defendants' second contention is correct as well; there was insufficient foundation laid as to whether the statements made by Virginia Lairby are typically relied on by experts in determining whether sexual abuse has occurred. Indeed, there was almost no development of the factual foundation for Dr. Palmer's opinion. See Utah R.Evid. 56(2), 9B U.C.A., 1953 (1977). However, defendants are precluded from challenging this failure because every time the prosecution attempted to introduce such testimony, defense counsel objected and was erroneously sustained by the trial judge on the ground of hearsay.[13] The facts on which Dr. Palmer relied and the ones about which he was precluded from testifying were the verbal and behavioral indicators of sexual abuse exhibited by Virginia Lairby. Dr. Palmer was asked to relate and describe her behaviors and statements, not to prove the truth of the content of the latter, but in order to testify about the medical significance of the making of such statements by a child of Virginia's age and experience. The statements were therefore not hearsay and should not have been excluded. Because Dr. Palmer was not allowed to testify about the verbal and behavioral "indicators" referred to above, he was also unable to testify that those indicators are regularly relied on by experts in diagnosing sexual abuse in young children.[14] As a result of defendants' improper hearsay objections, the specific information on which Dr. Palm-

12. The Court is aware from its review of testimony from Dr. Palmer in previous cases on appeal that he is a well-recognized expert in the diagnosis of physical and sexual abuse of children. A logical inference to be drawn from defense counsel's failure to challenge his qualifications is simply a desire to save the time that would have been consumed in putting them in the record.

13. And defense counsel did not seek the underlying data on cross-examination.

14. See Edwards v. Didrickson, Utah, 597 P.2d 1328, 1332 n. 2 (1979).

er relied and an explanation of his decision process were never detailed.[15] While hearsay objections to Dr. Palmer's testimony regarding the data on which he relied were sustained, defense counsel also objected to Dr. Palmer's giving his opinion for lack of foundation. The court precluded admission of the opinion evidence by sustaining defense objections twice, but then allowed the opinion to come in based on Dr. Palmer's "objective and subjective" examination of the child.

As indicated above, it was incorrect to exclude Dr. Palmer's testimony regarding the verbal and behavioral indicators exhibited by Virginia Lairby. The statements made by her to Dr. Palmer were not offered for the truth of what she said, but as objective symptoms on which Dr. Palmer relied.[16] Defendants may not improperly object to the admission of evidence and complain on appeal about its omission. Finally, Dr. Palmer was not testifying to Virginia Lairby's veracity, but whether, in his opinion, she had been a victim of sexual abuse.[17] Thus, defendants' third claim of error with regard to Dr. Palmer's testimony is without merit.

### O. *Jury Instructions*

Defendants contend the trial court erred in its instructions to the jury. They argue either that the court refused to include an instruction on an issue defendants deemed pertinent or that the instruction given by the court was improper.

 The two areas in which defendants allege the court erred by not giving an instruction are the defense theory of the crimes and character testimony. In order

for this Court to consider whether the trial court improperly refused to give a proposed jury instruction, the proposed instruction must be included in the record on appeal. *State v. Knill,* Utah, 656 P.2d 1026, 1029 (1982). The record in the instant case does not contain the proposed instructions that defendants claim were improperly denied. Thus, this Court cannot consider defendants' assignments of error in those areas.

 With respect to defendants' assertion that the trial court failed to instruct the jury on the State's burden to prove guilt beyond a reasonable doubt, Instruction No. 15 adequately advised the jury of the requisite standard of proof. In addition to the specific "reasonable doubt" language in paragraph three of the instruction, the primary purpose of the instruction when read as a whole is to insure that the jury clearly understands the concepts of "burden" and "reasonable doubt." With an entire instruction devoted to this purpose, there can be little doubt that the jury was aware of the degree of proof required for conviction. Defendants also contend that Instruction No. 10 on the competency of a child as a witness was improper. The instruction reads as follows:

A minor child is a competent witness to testify if it appears that the child understands the difference between telling a lie and telling the truth; that she understands she has a duty to tell the truth; that she has sufficient intelligence and maturity to understand questions put to her; that she has some knowledge of the subject matter and facts involved therein

---

**15.** Dr. Palmer was permitted on cross-examination to state:

> I'm saying my experience, my experience after seeing children who have been sexually abused is that children whose behavior, and that includes vocabulary and way of expressing things in terms of their genital area, when the behavior is beyond that which would be acceptable as normal, if you will, in a sexual sense in a given age group, then that has—yes, that has to influence a concern. It is one of the indicators of sexual abuse.

**16.** Furthermore, this Court has held that an expert witness in a civil or criminal case may rely on hearsay matter if it is the kind of information that experts in the subject matter would regularly rely upon. *State v. Clayton,* Utah, 646 P.2d 723, 725–26 (1982).

**17.** Dr. Palmer did not conclude or testify that Virginia Lairby had been sexually abused by her father and stepmother. He stated only that, in all probability, Virginia was a victim of sexual abuse.

and that she is able to remember what happened.

Relying on *State v. Wilkerson*, Utah, 612 P.2d 362, 364–65 (1980), defendants argue the instruction should read "has a *moral* duty to tell the truth ..." (emphasis added), rather than just "has a duty to tell the truth...." In quoting the standard for competency of child witnesses from *State v. Smith*, 16 Utah 2d 374, 377, 401 P.2d 445, 447 (1965), the *Wilkerson* Court used the phrase "sense of *moral* duty...." 612 P.2d at 364–65 (emphasis added). The significance of the phrase is to emphasize that a child witness must recognize the obligation to testify truthfully; it was not intended to prescribe the exclusive wording to describe that obligation. Instruction No. 10, with the word "duty" unmodified by the word "moral," adequately informed the jury of the importance of a child witness' recognition of his obligation to testify truthfully and thus was not inconsistent with the standard articulated in *Wilkerson*.

██ Finally, with respect to defendants' argument that there was some irregularity in the rape and sodomy instructions (Nos. 17 and 18), those instructions expressly adhered to the requirements of U.C.A., 1953, §§ 76–5–402 (1978), 76–5–403 (1978), 76–5–407(2) (Supp.1983), for rape and sodomy and the sexual penetration or touching sufficient to constitute each offense.

### P. Character Testimony

 Defendants claim they were denied their right to present character testimony. A defendant may offer evidence of his honesty and truthfulness as supporting his credibility, *State v. Sisneros*, Utah, 581 P.2d 1339, 1342 (1978). He may also offer evidence of trait of character tending to prove his innocence of the offense charged. Utah R.Evid. 47(b)(i), 9B U.C.A., 1953, (1977); *cf. State v. Ervin*, 22 Utah 2d 216,

219–20, 451 P.2d 372, 373–74 (1969). On appeal, defendants do not specify the nature and purpose of the character testimony they claim was wrongfully excluded. Defendants point to four places in the record where, they assert, objections to certain questions relating to defendants' character were improperly sustained.[18] Defendants do not explain how the court erred or the prejudicial impact of the exclusions.

After reviewing those particular exclusions and all of the testimony of defendants' character witnesses, we have determined that, in each instance, either the objections were properly sustained; the information excluded was of negligible value in terms of prejudice; or defense counsel managed, through restating questions or establishing the proper foundation, to get in the information initially excluded. Overall, much positive testimony was elicited from defendants' character witnesses. We therefore find this assignment of error without merit.

Defendants' claim that they were improperly denied a jury instruction on character evidence has already been discussed.

### Q. Admission of Portion of Exhibit

██ Defendants claim that the court below erred by admitting only a portion of a letter written by defendant Timothy Lairby to Mildred Lairby's ex-husband. It is not clear from the record which party offered the letter for introduction into evidence in the first place. It is clear, however, that the trial court received only a portion of the letter, excluding the remainder on the ground that it was irrelevant.

The letter, however, was not included in the record on appeal. In its absence, we have no means of determining its relevance and cannot rule on this question. *State v.*

---

**18.** The questions referred to are:

(1) Mildred Lairby's brother-in-law was asked if, at any time, her friends made "negative comments about her character."

(2) The defendants' local religious leader was asked if their membership in their church had been revoked.

(3) The same religious leader was asked his opinion of the honesty and morality of the defendants, based on his knowledge thereof compared with that of other church members.

(4) Timothy Lairby's co-worker was asked about Lairby's reputation for honesty and morality at their place of employment.

*Wulffenstein,* Utah, 657 P.2d 289, 292–93 (1982), *cert. denied,* 460 U.S. 1044, 103 S.Ct. 1443, 75 L.Ed.2d 799 (1983); *Powers v. Gene's Building Materials,* Utah, 567 P.2d 174, 175–76 (1977).

### R. Post-Trial Motions

At the close of evidence, defendants moved to dismiss the charges. After the verdict was returned, they moved to arrest the judgment. Finally, they moved for a new trial. These motions, defendants claim, were improperly denied.

Defendants' contention that the trial court's denial of their motion to dismiss was a denial of due process is based entirely on insufficiency of the evidence. This Court addresses that claim below, concluding that there was substantial credible evidence supporting defendants' convictions. Thus, the trial court properly denied the motion to dismiss.

Defendants' claim respecting the trial court's denial of their motion to arrest judgment is also without merit. Utah R.Crim.P. 23 provides:

At any time prior to the imposition of sentence, the court upon its own initiative may, or upon motion of a defendant shall, arrest judgment if the facts proved or admitted do not constitute a public offense, or the defendant is mentally ill, or there is other good cause for the arrest of judgment.

Defendants did not satisfy the requirements of this rule.

Finally, the trial court did not abuse its discretion in denying defendants' motion for a new trial. Utah R.Crim.P. 24(a) provides in pertinent part:

The court may, upon motion of a party or upon its own initiative, grant a new trial in the interest of justice if there is any error or impropriety which had a substantial adverse effect upon the rights of a party.

Defendants' motion for a new trial failed to establish any error or impropriety which had a substantial adverse effect upon their rights. The errors they alleged in that motion have been addressed above, and all have been disposed of as meritless.

### II. Ineffective Assistance of Counsel

Defendants contend they were denied their right to effective assistance of counsel as guaranteed by the sixth amendment to the United States Constitution and by art. I, § 12, Utah State Constitution. In *Codianna v. Morris,* Utah, 660 P.2d 1101, 1109 (1983), this Court reaffirmed the *McNicol* test of effective assistance of counsel: an accused "is entitled to the assistance of a competent member of the Bar, who shows a willingness to identify himself with the interests of the accused and present such defenses as are available under the law and consistent with the ethics of the profession." *State v. McNicol,* Utah, 554 P.2d 203, 204 (1976) (footnote omitted). In *Codianna,* we also identified the following considerations in reviewing a claim that counsel's assistance was so defective as to require reversal of a conviction:

(1) The burden of establishing inadequate representation is on the defendant, "and proof of such must be a demonstrable reality and not a speculative matter." *State v. McNicol,* 554 P.2d at 204. (2) A lawyer's "legitimate exercise of judgment" in the choice of trial strategy or tactics that did not produce the anticipated result does not constitute ineffective assistance of counsel. *State v. McNicol,* 554 P.2d at 205. (3) It must appear that any deficiency in the performance of counsel was prejudicial. *State v. Forsyth,* Utah, 560 P.2d 337, 339 (1977); *Jaramillo v. Turner,* 24 Utah 2d 19, 22, 465 P.2d 343, 345 (1970).

*Codianna,* 660 P.2d at 1109. Our reasoning is consistent with *Strickland v. Washington,* — U.S. —, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in which the Supreme Court recently declared:

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires

showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* —— U.S. at ——, 104 S.Ct. at 2064. The level of judicial scrutiny which defense counsel's performance must withstand is highly deferential.[19] *Id.* —— U.S. at ——, 104 S.Ct. at 2065.

 Defendants challenge counsel's assistance in several respects. First, they assert that defense counsel did not make his opening statement until the opening of defendants' case in chief and then, defendants claim, the statement was defective such that they were "denied the opportunity to present the jury with an intelligent, cohesive description of their case." Defendants further claim that defense counsel's closing statement was defective. Defendants do not explain why the timing of the opening statement was not merely a "legitimate exercise of judgment." *State v. McNicol,* 554 P.2d at 205. As to the quality of the opening and closing statements, defendants do not even attempt to demonstrate how counsel's representation in this regard "fell below an objective standard of reasonableness." *Strickland,* —— U.S. at ——, 104 S.Ct. at 2065. "The object of an ineffectiveness claim is not to grade counsel's performance." *Id.* —— U.S. at ——, 104 S.Ct. at 2070. The record does not reveal and defendants make no showing that the opening and closing state-

ments support a claim of ineffectiveness of counsel.

Defendants also claim that trial counsel's failure to move to strike the testimony of four State witnesses reflects ineffective assistance of counsel. Defendants allege that the witnesses, Craig Duvall, Christine Swanson, Linia Teniaki, and Kelly Powers, "offered no probative testimony as to the truth of the allegations." Defendants are not specific regarding any objections, the grounds for the proposed motion to strike, or whether it was likely the trial court would have granted such a request. Furthermore, as a result of repeated objections to the witnesses' testimony by defense counsel, nothing therein may be remotely characterized as harmful or prejudicial to the defense.

Defendants next argue that trial counsel was ineffective when he attempted to impeach a State witness based on prior inconsistent statements from a preliminary hearing without requesting transcripts from the hearing. As noted previously, defendants have not provided those transcripts as part of the record on appeal. Nor do defendants explain the content of the inconsistent statements and how they would have been helpful. Without more, we cannot consider whether this point of error represents ineffective assistance of counsel.

Defendants also challenge the trial counsel's assistance with respect to his failure to elicit character witness testimony. The record indicates the contrary. Despite repeated objections, defense counsel managed to elicit much positive testimony from the character witnesses. We there-

**19.** The *Strickland* court explained its reasoning:

It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. *Cf. Engle v. Isaac,* 456 U.S. 107, 133–134, 102 S.Ct. 1558, 1574–1575, 71 L.Ed.2d 783 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of

counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *See Michel v. New York, supra,* 350 U.S. 91 at 101, 76 S.Ct. 158 at 164, 100 L.Ed. 83. *Id.,* —— U.S. at ——, 104 S.Ct. at 2065–66.

fore find this claim as to ineffective assistance of counsel to be without substance.

As further evidence of ineffective assistance, defendants point to defense counsel's allowing a prejudicial document (the Lairby letter) to be admitted without his seeing it. The record indicates that counsel asked to read the letter referred to by defendants and that he initially objected to its admission. Moreover, as we noted previously, the letter was not included in the record on appeal, and we can make no assessment regarding its effect on defendants' case.

 The last claim we consider under defendants' ineffectiveness argument is defense counsel's failure to object to prosecution questions about Mildred Lairby's decision to remain silent after being advised of her Miranda rights at the time of her arrest. The State agrees that eliciting evidence of a defendant's decision to exercise her constitutional right to remain silent, or prosecutorial comment thereon, may violate a defendant's right against self-incrimination. *Doyle v. Ohio*, 426 U.S. 610, 618, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976); *State v. Hales*, Utah, 652 P.2d 1290, 1291–92 (1982). Thus, it was error for defense counsel not to object to the questions asked by the prosecutor and to himself ask questions on the subject.[20]

Having determined that defense counsel's performance was deficient with regard to the foregoing error, the issue is whether this deficiency was prejudicial. *Codianna*, 660 P.2d at 1109. In *Codianna*, this Court quoted *State v. Gray*, Utah, 601 P.2d 918, 920 (1979), and said, "[P]rejudice means that without counsel's error

there was a 'reasonable likelihood that there would have been a different result....'" 660 P.2d at 1109. The Supreme Court in *Strickland* set the standard for prejudice "somewhat lower," stating as follows:

> An ineffective assistance claim asserts the absence of one of the crucial assurances that the result of the proceeding is reliable, so finality concerns are somewhat weaker and the appropriate standard of prejudice should be somewhat lower. The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.
>
> ... The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Strickland*, —— U.S. at ——, 104 S.Ct. at 2068. We necessarily defer to the federal standard for prejudice where a defendant claims his sixth amendment right to effective assistance of counsel has been violated. As applied to the present case, the issue is therefore whether there is a reasonable probability that but for defense counsel's allowing the prosecution to question the detective regarding Mildred Lairby's exercising her constitutional privilege and himself questioning the detective on the same matter, the result of the proceeding would have been different.[21]

---

**20.** The exchanges at issue took place during the testimony of an investigating police officer.
On direct by prosecutor:
QUESTION: "Detective Blunck, did you ever ask Mildred Lairby if she would talk to you?"
ANSWER: "I did one time."
QUESTION: "What was her response?"
ANSWER: "That she wanted to talk and consult with her attorney."
On recross by defense counsel:
QUESTION: "So, after the Miranda warning was given she did not say anything to you; is that correct?"
ANSWER: "No sir. She requested her attorney."

**21.** Consistent with the discussion in *Strickland*, the issue may also be framed as whether the deficiency in performance "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, —— U.S. at ——, 104 S.Ct. at 2064. *Cf. United States v. Cronic*, —— U.S. ——, ——, 104 S.Ct. 2039, 2045, 80 L.Ed.2d 657 (1984) ("The right to the effective assistance of counsel is ... the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted—even if defense counsel may have made demonstrable errors—the kind of

We conclude it is not reasonably probable that the error in question affected the reliability of the outcome of the trial. This is not a case where there were repeated efforts to elicit testimony regarding a defendant's silence, *see, e.g., State v. Wiswell,* Utah, 639 P.2d 146 (1981), indeed the questioning was quite limited. There was no comment on it in closing argument. Moreover, the trial judge, having admonished counsel not to mention the subject in final argument, specifically instructed the jury "that no presumption or inference adverse to [Mildred Lairby] is to arise from the fact that she exercised her constitutional right to speak to an attorney." *See Hales,* 652 P.2d at 1292 ("A curative instruction is often mentioned by courts as an important consideration in reviewing the constitutionality of prosecutorial comments."). Additionally, Mildred Lairby testified extensively in her own behalf at trial thereby offsetting or even dispelling any negative inference regarding her silence when approached by Detective Blunck.

█ On another level, we must view the deficiency of counsel on this point in the context of defense counsel's overall performance as it affected the "proper functioning of the adversarial process." *Strickland,* — U.S. —, 104 S.Ct. 2064. The record discloses that defense counsel conducted extensive cross-examination of the two complaining child witnesses, eliciting in a competent fashion discrepancies and weak elements in the State's case. Additionally, by his objections during the testimony of two State expert witnesses, William Palmer and Christine Swanson, he effectively excluded much evidence that should in fact have been admitted and was supportive of the State's case. It appears that defense counsel fully participated in the trial and willingly identified himself with the interests of the accused persons.

*See Codianna,* 660 P.2d at 1109; *see also Strickland,* — U.S. at —, 104 S.Ct. at 2065. Defendants do not charge that there were any defense theories suggested but unexplored. In conclusion, the record fails to establish defendants' claim of ineffective assistance of counsel.

### III. Credibility of Testimony and Sufficiency of the Evidence

Defendants argue that the testimony of Virginia Lairby and Carri Long was so inherently improbable as to be "incredible as a matter of law." [22] Defendants rely on the proposition that "[a] reviewing court will overturn the jury on the question of credibility of the witnesses only when the evidence presented is so improbable, unbelievable, or unsatisfactory as to raise a serious question of the guilt of the defendant." *People v. Dunn,* 49 Ill.App.3d 1002, 1009, 7 Ill.Dec. 879, 885, 365 N.E.2d 164, 170 (1977). *See also State v. Middelstadt,* Utah, 579 P.2d 908, 909 (1978).

We have examined the record and conclude that the foregoing rule does not apply to the testimony of either of the complaining child witnesses.

█ Defendants focus on the childlike language used by Virginia Lairby, who was six at the time of trial, and on conflicts within the individual testimony and between the respective testimony of Virginia Lairby and Carri Long, the alleged victims. The State argues and we agree that a child may perceive and relate facts differently than would an adult, but that does not prevent a child from testifying truthfully, accurately, and in a manner which can be understood by the jury.[23] *See State v. Wilkerson,* Utah, 612 P.2d 362, 364–65 (1980). Although we will not affirm a judgment reached on evidence which is inherently improbable, testimony that merely reflects the age, immaturity, and juvenile

---

testing envisioned by the Sixth Amendment has occurred." (Footnotes omitted.)).

**22.** In their *pro se* brief, defendants also argue that the lower court admitted perjured testimony. In substance, however, this is a credibility argument, emphasizing as it does factual incon-

sistencies in the testimony. We therefore treat it here.

**23.** For example, that a "winky" instead of "penis" touched the inside of her "privates" instead of "vagina" does not support the contention that the testimony was improbable.

vocabulary of a child does not fall within that category.

▆ Additionally, this Court has said, "[I]t is not our province to measure conflicting evidence.... That responsibility belongs strictly to the trier of fact." *State v. Wulffenstein*, Utah, 657 P.2d 289, 292 (1982) (citing *State v. Logan*, 563 P.2d 811, 813 (1977)), *cert. denied*, 460 U.S. 1044, 103 S.Ct. 1443, 75 L.Ed.2d 799 (1983). Inconsistencies in the testimony, therefore, were for the jury to resolve. Our task is to assure that the evidence before the jury was substantial, thus permitting the conclusion that the jury could have properly arrived at a verdict of guilty beyond a reasonable doubt. That point is dealt with below.

▆ Lastly, defendants' argument that there was insufficient evidence to find them guilty beyond a reasonable doubt must also be rejected. The test for reviewing a sufficiency of the evidence claim is well settled.

[W]e review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict of the jury. We reverse a jury conviction for insufficient evidence only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted. *State v. Kerekes*, Utah, 622 P.2d 1161, 1168 (1980); *State v. Lamm*, Utah, 606 P.2d 229, 231 (1980); *State v. Gorlick*, Utah, 605 P.2d 761, 762 (1979); *State v. Daniels*, Utah, 584 P.2d 880, 882–83 (1978); *State v. Romero*, Utah, 554 P.2d 216, 219 (1976).

*State v. Petree*, Utah, 659 P.2d 443, 444 (1983).

In the instant case, the testimony of Virginia Lairby and Carri Long related specific acts that common sense dictates could only be within the knowledge and experience of young children who had been exposed to entirely inappropriate sexual behavior. Their testimony was essentially consistent. They related the same incidents on several different occasions to doctors, police, family members, and the court. At trial, defense counsel conducted a thorough cross-examination of each girl. After they were led by his questioning on to various tangents, they returned to the incidents of sexual abuse with regularity and conviction.

Defendants have alleged throughout their briefs that the children related fabricated stories of sexual abuse resulting from a conspiracy by defendants' ex-spouses.[24] However, no evidence or reasonable inferences support such an allegation. Earlier in our discussion, we pointed out that there was no evidence of any communication at any time between Wanda Lairby and Richard Long. The two children, living in households in Utah and Arizona, would have had to be coached extensively and maintain their "stories" over a period of more than a year. Neither child retracted the essential allegations of abuse throughout long and difficult interrogation. There was no evidence that defendants and their ex-spouses anticipated custody battles or were unhappy with custody arrangements prior to the incidents charged here. There was no evidence that Wanda Lairby would not be considered a suitable custodial parent or that Richard Long ever expressed the desire to obtain custody of his children. Defendants testified that their ex-spouses did not allow them the contact and visitation defendants desired after their arrests. Such behavior on the part of the ex-spouses, however, is not evidence of a motive to fabricate, occurring as it did after the events of sexual abuse charged against the defendants.

Dr. Palmer corroborated Virginia's testimony by testifying that, as a physician experienced in dealing with sexually abused children, he was of the opinion that

---

**24.** They also at various times have included in the conspiracy the prosecuting attorney and a police detective.

her verbal and behavorial symptoms indicated she was in all probability a victim of sexual abuse.[25]

Wanda Lairby's testimony did not reveal that she was vindictive toward her ex-husband or that she harbored any fear that she would be unable to gain permanent custody of her children. We conclude there was substantial credible evidence supporting defendants' convictions.

The verdicts below are affirmed.

HALL, C.J., concurs.

STEWART and HOWE, JJ., concur in the result.

ZIMMERMAN, J., does not participate herein.

---

**25.** His opinion was reinforced, he testified, by the report of a clinical psychologist, Christine Swanson. She was a witness at trial, but her opinion was excluded on the erroneous objection of defense counsel that it contained hearsay.